# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00210-CR

**Gregory Michael Klapesky, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT
NO. 03-1063-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING**

## O P I N I O N

Appellant Gregory Michael Klapesky appeals his conviction for first-degree murder of his wife, Kali Sansone. *See* Tex. Penal Code Ann. § 19.02(b)(2) (West 2003). The jury found appellant guilty and assessed his punishment at imprisonment for life.

## POINTS OF ERROR

Appellant advances four points of error. First, appellant contends that the trial court erred in failing to allow a hearing on appellant's motion for a new trial. Second, appellant urges that the trial court erred in removing his first appointed trial counsel on the State's motion. Third, appellant asserts that the trial court erred in overruling his motion to suppress the evidence found in appellant's vehicle. Fourth, appellant claims that the trial court erred in allowing the alternate jurors to enter the jury room to begin deliberation in violation of article 36.22. *See* Tex. Code Crim. Proc. Ann. art. 36.22 (West 2006) (conversing with jury).

## BACKGROUND

Appellant does not challenge the legal or factual sufficiency of the evidence to sustain the conviction. A brief summary of the voluminous evidence will place the points of error in proper perspective. Appellant and Kali Sansone lived together and then later married in 2001. They had a son, Phillip, soon thereafter. Appellant was on felony probation for possession of narcotics and he continued to have difficulties with illegal drugs. He did acquire a real estate license and started work in that field. Appellant and his wife went to a marriage counselor in an attempt to save their marriage. They had monetary problems. The family cars were repossessed because of loans made to appellant.

Kali's parents, Phillip and "Neca" Sansone, began to provide money to Kali, who was working. They purchased a home in Cedar Park and placed the title in Kali's name. The Sansones also purchased a 1994 White Lexus automobile and placed the title in Kali's name.

Sometime in July 2003, a motion to revoke appellant's probation was filed and a warrant for his arrest was issued. To avoid arrest, appellant fled to Mexico with a girl named "Summer." Before leaving the Austin area, appellant sold a number of items and a boat to finance his trip. Later, appellant began contacting friends in Texas to send him money for food. Several friends complied with the requests. In early September 2003, due to the lack of money, appellant returned to Texas. His friend, Elfego Wences, met appellant at the Mexican border and drove appellant to Austin. On this trip, appellant told Wences that he planned to sell the Cedar Park home and build a home in Mexico where he would live permanently. Appellant first stayed in a spare room at the Wences's house, but moved around to different Austin homes of friends. Wences saw

2

appellant driving a yellow Chrysler car.  Appellant returned on one occasion with a woman, not his wife.  When Wences learned they were smoking marihuana, he remonstrated with appellant.

John Hernandez, another Austin friend, had purchased the boat from appellant and later sent money to appellant in Mexico.  On September 19, 2003, Hernandez received a call from appellant asking for help in moving items from the Cedar Park house.  In the early morning hours of September 21, 2003, between 1:00 and 6:00 a.m., Hernandez received several urgent telephone calls from appellant asking for help in moving.  Hernandez testified that on that date, he drove his Toyota Land Cruiser and picked up appellant at a bus stop near the Wences home.  They then drove to the Cedar Park house where appellant closed the garage doors after Hernandez drove his vehicle inside.  He helped appellant load the vehicle with personal items and baby clothes.  He did not see any property belonging to appellant's wife, Kali.  On the return trip, appellant used a cell phone and had some methamphetamine and marihuana delivered to them en route, which they both used on the return trip.  Appellant told Hernandez that he (appellant) had been arguing with Kali for three days and had been unable to sleep.  At some point, appellant asked Hernandez if he had ever killed anyone.  When Hernandez posed the same question to appellant, he responded that he had never killed anyone "that didn't deserve it."  Appellant then stated, "What if I told you I killed my wife?"  Appellant related to Hernandez that he loved Kali and wanted to get back together with her, but she was crazy because she had tried to kill him by running over him with a car.

When they arrived at the Wences home, Hernandez saw a white Lexus parked in the driveway.  He helped appellant move the items from his vehicle into a room in the Wences home.  Thereafter, Hernandez left the premises.

3

Jessica Wences, Elfego's wife, testified that appellant, in a white Lexus, arrived at her home in the early morning hours of Sunday, September 21, 2003, with his son, Phillip. She took care of Phillip when appellant left. He later returned with Hernandez. After Hernandez's departure, appellant began packing items into the Lexus. Jessica Wences saw appellant trying to place what appeared to be a large metal bar in the Lexus's trunk. When the trunk was opened, she saw something like a greyish-bluish air mattress therein. Unable to get the "bar" in the trunk, appellant placed it inside the Lexus. Appellant was in a hurry and when the Lexus was packed with items, he left in the Lexus with his son, Phillip, in the back seat.

Eugenio Gamez had worked as a mechanic in his uncle's auto shop and had rebuilt appellant's Mustang automobile. At about 8:30 a.m. on September 21, 2003, Gamez received a telephone call from appellant, who asked if he could go to Gamez's house. Gamez agreed, but appellant did not arrive until noon. He was in a white Lexus automobile with his son, Phillip. Appellant told Gamez that he was going to Mexico and wanted to bury some money in a hole in Gamez's backyard. This somewhat confused Gamez. As they talked, appellant began to smoke what appeared to Gamez to be methamphetamine. Appellant later took a metal bar out of the Lexus, which appeared to Gamez to be a post hole digger of some kind. Borrowing shovels from Gamez, appellant started digging in the backyard. Gamez went inside his house. He later returned with a breakfast taco for appellant, and found a five to six foot long and one foot deep hole in his backyard. Gamez told appellant, "You could put a body in there." Appellant responded: "There's nothing I could have did. She wasn't going to let me see my little boy again." Gamez knew appellant's wife, Kali. Appellant told Gamez that Kali had been "cheating on him." Gamez became uncomfortable

4

and told appellant that he (Gamez) had to leave, that his uncle would be coming by, and asked appellant to come back later. As appellant drove off, Gamez observed that the rear end of the Lexus was lower than it should be.

Gamez left his house with his family. As he drove to his uncle's house, Gamez saw appellant at a nearby convenience store. After arriving at his uncle's house, Gamez revealed what had occurred, and his suspicions. Two of the female relatives there called 911 and contacted the police. When Gamez returned home, his family went inside. Gamez then approached appellant in the Lexus parked on Gamez's property. He observed that appellant had a six pack of beer and was going through Kali's purse. As appellant threw items out of the purse, he would say that "she won't have use for this anymore." The police had not arrived, and Gamez was worried about what appellant would do next. To distract him, Gamez offered him a marihuana cigarette, which appellant grabbed. About this time, Gamez saw the police vehicle approaching.

Hays County Deputy Sheriff Lenny Martinez testified that he received a dispatch at 4:16 p.m. on September 21, 2003, about a man in a white Lexus with a boy in the car and the man's murdered wife in the trunk. Upon arriving at the Gamez home, Martinez saw the white Lexus, its driver, and a young boy. With his weapon drawn, Martinez ordered appellant to get out of the Lexus and on his knees. As Martinez got closer to the car's trunk, he smelled the odor of a dead body. Appellant would not consent to a search of the trunk without a warrant. Martinez opened the trunk and found the body of Kali Sansone rolled in an air mattress, wrapped in bed linens and other clothing, and tied with a cut-up garden hose.

5

At the time of booking, appellant displayed signs of intoxication: poor eye contact, slurred speech, and poor balance. He also exhibited signs of lack of sleep. At a hospital, appellant's blood was taken for testing. His blood alcohol content was low, but he tested positive for marihuana and methamphetamine.

The body of Kali Sansone was transported to the morgue in the same condition it was found in the trunk of the Lexus. Dr. Elizabeth Peacock, Travis County Deputy Medical Examiner, testified that after the autopsy, she determined Kali Sansone was the victim of homicide by manual strangulation. There were pressure points on both sides of the neck but no evidence of any struggle or defensive wounds. It was shown that appellant was a strong man with a muscular build. Among the items that he removed from the Cedar Park house was his weight-lifting equipment.

The defense rested and closed with the State. At the conclusion of the testimony at the guilt/innocence stage, in open court and in the jury's absence, appellant's counsel explained to the trial court and for the purpose of the record why no evidence had been offered on behalf of appellant. This explanation was made in appellant's presence. Counsel stated that the defense evidence would have shown acts of violence between Kali and appellant. The district attorney had made clear that in response to such defensive evidence, the State would offer evidence that appellant tried to drown Kali, had choked another female, and had committed other extremely prejudicial bad acts. It had been decided that a reasonable approach would be not to present the planned defensive evidence, which would open the door to evidence that would be harmful to appellant. Counsel stated that he and co-counsel had "talked to Mike [appellant] and he agrees that's the reasonable way to proceed. But we wanted to put our reasoning on the record."

6

## MOTION TO SUPPRESS

In his third point of error, appellant claims that the "trial court erred in failing to suppress the evidence found in appellant's vehicle." Appellant filed a pretrial motion to suppress all evidence seized from the trunk of the white Lexus, claiming that it constituted an illegal warrantless search in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 9 of the Texas Constitution. Before trial, the trial court heard the motion to suppress and overruled it. Appellant urges such ruling was in error and requests a reversal of his conviction.

During trial, when the State introduced photographs of the Lexus automobile and its contents at the time of the search, appellant stated: "No objection, Your Honor." Later, when a videotape at the scene of the search showing the removal of a body from the Lexus's trunk was offered into evidence by the State, appellant again stated: "No objection." No objection was made when Dr. Peacock testified that the victim's body was brought to the medical examiner's office in the same condition as it had been found, on an air mattress, wrapped in bed linens, and tied with a garden hose. When a videotape and photographs of the autopsy were offered into evidence, appellant stated each time: "We have no objection, Your Honor."

When a pretrial motion to suppress evidence is overruled, a defendant need not object subsequently at trial in order to preserve error. However, when the defendant affirmatively asserts during trial that he has no objection to the admission of the complained-of evidence, he waives any error in the admission of the evidence. *See Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Deen v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988); *Moraguez v. State*, 701 S.W.2d

7

902, 904 (Tex. Crim. App. 1986); *Gearing v. State*, 685 S.W.2d 325, 329 (Tex. Crim. App. 1985); *Fierro v. State*, 969 S.W.2d 51, 55 (Tex. App.—Austin 1998, no pet.). The third point of error is overruled on the basis of waiver.

## REMOVAL OF COUNSEL

In his second point of error, appellant claims that the "trial court erred in removing trial counsel on [the] State's motion [and] over appellant's objections." After two hearings on the State's pretrial motion to disqualify Mike Davis, appellant's first appointed counsel, the trial court removed Davis as counsel on the basis of his conflict of interest. The evidence was undisputed that Davis had been employed in the past by Williamson County to represent the county and its officials in civil law cases. At the time of the hearings, Davis was representing the county on appeal in a federal civil rights case, in which district attorney John Bradley[1] had been a party and had been represented by Davis. Davis also represented the county and the sheriff in another pending case, brought by fired employees against the sheriff, in which the district attorney and some of his assistants would possibly become witnesses.

Both the federal and state constitutions guarantee a defendant, in a criminal case, the right to have the assistance of counsel. *See* U.S. Const. amend. VI; Tex. Const. art. I § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.05 (West 2005); *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981). This right contemplates a defendant's right to obtain assistance from counsel of the defendant's choosing. *Gonzales v. State*, 117 S.W.3d 831, 836-37 (Tex. Crim. App.

---

[1] District Attorney John Bradley was lead counsel for the State in the instant case.

2003). However, the right is not absolute. *Wheat v. United States*, 486 U.S. 153, 159 (1988). A defendant has no right to an advocate who is not a member of the bar, an attorney he cannot afford, or who declines to represent him, or an attorney who has a previous or ongoing relationship with an opposing party. *Id.*; *Gonzales*, 117 S.W.3d at 837. One of the limitations arises when counsel has an actual or potential conflict of interest in representing the defendant. *Brink v. State*, 78 S.W.3d 478, 485 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd); *see also Glasser v. United States*, 315 U.S. 60, 75-76 (1942).

There is, of course, a strong presumption in favor of a defendant's right to retain counsel of choice, but this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice. *Gonzalez*, 117 S.W.3d at 837. A trial court has an independent duty to ensure a fair trial and may infringe upon a defendant's constitutional right to counsel if there is an actual or serious potential for conflict of interest. *Brink*, 78 S.W.3d at 485-86 (citing *Stearnes v. Clinton*, 780 S.W.2d 216, 222-23 (Tex. Crim. App. 1989)).

A trial court's actions rise to a constitutional level if the court unreasonably or arbitrarily interferes with a defendant's right to choose counsel. *Gonzalez*, 117 S.W.3d at 837. Great caution must be exercised in disqualifying or removing defense counsel. *Id*.

In the instant case, appellant was represented by appointed counsel after retained counsel withdrew. Some distinctions arise between defendants who retain attorneys to defend them and defendants for whom attorneys are appointed. *Camacho v. State*, 65 S.W.3d 107, 109 (Tex. App.—Amarillo 2000, no pet.). Generally, a defendant has the right to retain counsel of his

9

own choice. *Stearnes*, 780 S.W.2d 216, 222 (Tex. Crim. App. 1989). An indigent defendant may not, however, insist on the appointment of a particular attorney. *Id.* at 221. Once established, the attorney-client relationship should be protected by the courts without distinction as to whether the attorney is retained or appointed. *Id.* at 221-22; *Camacho*, 65 S.W.3d at 109.

The record in the instant case reflects that appellant was originally represented by retained counsel, Ben Florey. When Florey was permitted to withdraw, Davis was appointed to represent appellant. Subsequently, the State filed its motion to disqualify Davis for a conflict of interest. As described earlier, prior to the two hearings, Davis filed a written response to the State's motion, generally questioning any possible conflict of interest and alleging that he was being threatened with economic sanctions by the district attorney. He alleged that he had been informed that if he was not removed as counsel for appellant, the district attorney would ask the commissioners court of the county to discharge him as counsel in pending litigation and not to employ him for further litigation.

Davis further alleged that the State's motion had, in fact, created a "new" conflict of interest between him and appellant. He urged that there was, for that reason, good cause for him to withdraw as counsel and that new counsel should be appointed for appellant. Appellant filed a pro se statement that he desired Davis to continue as his counsel.

At the second pretrial hearing on August 5, 2004, on the State's motion, the State offered to withdraw its motion and allow Davis to remain as appellant's counsel if appellant would

10

waive the conflict-of-interest issue in order to protect any resulting conviction on appeal.[2]  Davis

informed the trial court that he had instructed appellant not to waive the issue and there was no

waiver.  Davis argued that there was no conflict of interest under the circumstances.  The trial court

disagreed and granted the State's motion.  The trial court was concerned that the conflict of interest

could be successfully raised in an ineffective assistance of counsel claim on appeal or in a post-

conviction scenario.  Despite Davis's disclaimer, the record reflects the possibility of self-interest

in future litigation employment.  Moreover, Davis urged his own withdrawal because of a "new"

conflict and the appointment of different counsel.  Davis took somewhat inconsistent positions

during the hearing.

Appellant did not object to the trial court's ruling on constitutional grounds or

otherwise.  In fact, Davis expressly stated that he would not seek a writ because of the ruling and

none was filed.[3]

On the same date (August 5, 2004), with Davis's approval, the trial court appointed

attorney Patricia Cummings to represent appellant.[4]  Cummings appeared at two pretrial hearings

on August 12 and October 21, 2004.  There was no objection to Cummings's representation.  On

---

[2] Under certain circumstances, a defendant may waive his right to conflict-free counsel if the waiver is made knowingly and voluntarily.  *See Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981).

[3] A writ of mandamus to prevent an attorney's removal from the case is the normal vehicle for seeking relief from the complaint now made.  *See Buntion v. Harmon*, 827 S.W.2d 945, 946 (Tex. Crim. App. 1992); *Stearnes v. Clinton*, 780 S.W.2d 216, 217 (Tex. Crim. App. 1989); *see also Statts v. Wisser*, 894 S.W.2d 366, 367 (Tex. Crim. App. 1995).

[4] Attorney Mike Davis objected that the first attorney who was suggested as his replacement lacked experience.  He agreed, however, to call attorney Patricia Cummings and inform her of her appointment when the appointment was made.

December 16, 2004, she was allowed to withdraw as counsel. Appellant answered, "Yes, Your Honor," when asked by the trial court if he agreed to Cummings's withdrawal. Thereafter, the trial court expressly found that appellant approved the substitution of Russell Hunt, Jr. as his new appointed counsel. On January 31, 2005, Hunt appeared in open court and requested the appointment of additional counsel, attorney Virginia Greenway. Hunt's motion stated that appellant was willing to accept Greenway as counsel. Hunt and Greenway were appellant's trial attorneys.

Under our statutory scheme, a trial court may replace appointed counsel for good cause. *See* Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (West Supp. 2007). Here, the trial court found from the undisputed evidence that there was a conflict of interest. Davis advised appellant not to waive his right to conflict-free counsel. Yet, at the same time, Davis urged that he be allowed to withdraw and new counsel be appointed because of a "new" conflict between him and appellant caused by the State's motion. This is exactly what the court did, except upon the basis of the original conflict of interest. A defendant may not insist on the counsel of an attorney who has a previous or ongoing relationship with an opposing party, even when the opposing party is the government. *Wheat*, 486 U.S. at 159.

Even if it could be said that the trial court erred in granting the State's motion and did not remove Davis for a principled reason, there was a waiver of any error by appellant agreeing and accepting new counsel. *See Springer v. State*, 940 S.W.2d 322, 323-24 (Tex. App.—Dallas 1997, no pet.); *Emerson v. State*, 756 S.W.2d 364, 369 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

The trial court did not abuse its discretion in removing Davis. The second point of error is overruled.

**ALTERNATE JURORS**

In his fourth point of error, appellant asserts that the "trial court allowed the alternate jurors to enter the jury room to begin deliberations in violation of article 36.22." Tex. Code Crim. Proc. Ann. art. 36.22.

Early on, the trial court informed the jury panel that two alternate jurors would be chosen in this murder case in the event any one of the twelve-member jury became ill and unable to complete jury service in the case. The trial court explained that the alternate jurors would be excused at the beginning of deliberations if they were not needed. At the conclusion of the voir dire examination of the jury panel, two alternate jurors were selected. *See id*. art. 33.011(a) (West Supp. 2007).

After the completion of jury arguments at the guilt/innocence stage of the trial, the trial court excused the jurors to commence deliberation. About five minutes later, the trial court had the jury returned to the courtroom, apologized for not releasing the alternate jurors, and discharged the alternates. At the State's request, the trial court instructed the jury not to consider anything said in the presence of the alternate jurors and to begin deliberations. Appellant agreed the State's request was reasonable. The trial court then asked the jury whether deliberations had been commenced. The jury in unison answered, "No, sir." Appellant made no objection as the jury then retired to deliberate.

13

Appellant did not raise any issue about the alternate jurors in his motion for a new trial but advances it for the first time on appeal. To preserve error for appellate review, a defendant must make a timely, specific objection at trial. *See* Tex. R. App. P. 33.1(a). A specific contemporaneous objection to the claimed error is necessary to give the trial court or the opposing party an opportunity to correct the situation. *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977).

Appellant relies upon article 36.22 which provides:

> No person shall be permitted with a jury while it is deliberating. No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the trial court.

Tex. Code Crim. Proc. Ann. art. 36.22.

Harm to the accused is presumed when a juror converses with an unauthorized person about the case. *See Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997); *Green v. State*, 840 S.W.2d 394, 406 (Tex. Crim. App. 1992); *Stultz v. State*, 23 S.W.3d 198, 206 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Drone v. State*, 906 S.W.2d 608, 617 (Tex. App.—Austin 1995, pet. ref'd). If the presumption of harm arises, the State has the burden to rebut the presumption by showing no injury or prejudice to the accused. *Stults*, 23 S.W.3d at 206; *see also Quinn*, 958 S.W.2d at 401. However, the defendant has the initial burden to show that a conversation about the case on trial occurred between a juror and an unauthorized person. *See Chambliss v. State*, 647 S.W.2d 257, 265-66 (Tex. Crim. App. 1983); *Stults*, 23 S.W.3d at 206-07. The defendant's burden is not satisfied if there is no showing what a reported conversation was about. *Stults*, 23 S.W.3d at 207. In this case, the jury told the trial court that it had not begun

deliberations in the five minutes that the alternate jurors were in the jury room, and there is no showing of any conversation about the case between the two alternate jurors and the regular jurors during the time period involved. As far as this record is concerned, the jurors may not have commenced to select their presiding juror. Appellant did not originally object nor sustain his initial burden under article 36.22. The fourth point of error is overruled.[5]

## MOTION FOR NEW TRIAL

In his first point of error, appellant asserts that the "trial court erred in failing to allow a hearing on appellant's motion for a new trial."

On March 11, 2005, the trial court imposed sentence on appellant in open court. On April 7, 2005, appellant filed an unsworn motion for new trial, which was within the 30 days required. *See* Tex. R. App. P. 21.4. On April 11, 2005, appellant filed his "inmate affidavit"[6] in

---

[5] The State by letter brief cites *Bogue v. State*, 204 S.W.3d 828 (Tex. App.—Texarkana 2006, pet. ref'd). *Bogue* presents a similar fact situation as the instant case. There the alternate juror was in the jury room for approximately thirteen minutes before the jury was recalled and the alternate discharged. *Id*. at 829. The court of appeals found that the trial court erred by not timely discharging the alternate juror but considered the case a matter of jury misconduct (outside influence) where the standard of review was an abuse of discretion. *Id*. Articles 33.011 (a), (b) and 36.22 were not cited. *See* Tex. Code Crim. Proc. Ann. art. 33.011 (a), (b) (West Supp. 2007), art. 36.22 (West 2006). The *Bogue* court affirmed the felony DWI conviction finding no abuse of discretion by the trial court and no apparent harm. *Id*. at 830. The right decision was reached despite any difference in the reasoning with the instant case. The trial court's procedure in *Bogue*, after discovering the error, is interesting and worthy of consideration. After the alternate juror was discharged, the trial court, in the absence of the regular jury, called the alternate as a witness and had him testify about what occurred during the thirteen minutes that he was in the jury room after submission of the case. *Id*. At the conclusion of the trial, the trial court called the jury foreman as a witness and inquired into the matter. *Id*. A clear record was preserved by such procedure.

[6] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 132.001, 132.003 (West 2005); *Bahm v. State*, 219 S.W.3d 391, 393 (Tex. Crim. App. 2007); *Owens v. State*, 763 S.W.2d 489, 491 (Tex. App.—Dallas 1998, pet. ref'd); 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 41.26 (2d ed. 2001).

support of the motion but one day outside the 30 day limit. *Id.* The record does not reflect that the motion was presented to the trial court within 10 days as required. *See* Tex. R. App. P. 21.6. The State, on April 27, 2005, filed an answer with controverting affidavits from appellant's trial counsel regarding appellant's claim of ineffective assistance at trial. *See* Tex. R. App. P. 21.5.

Appellant, in a written document filed May 2, 2005, responded to the State's answer. In an order filed May 2, 2005, but dated April 29, 2005, the trial court—noting consideration of the motion for new trial, the State's answer, and appellant's response—stated that a hearing on the motion for new trial would be held on affidavits alone. *See* Tex. R. App. P. 21.7. The order further provided that all affidavits for the purpose of the hearing be filed by May 16, 2005. No date for such hearing was set.

On May 17, 2005, appellant's counsel on appeal filed a written objection to a hearing on the motion for new trial based on affidavits alone. In this document, sworn to by counsel, it is alleged that Davis, who had been removed as defense counsel, refused to give an affidavit but was willing to testify at a hearing, and that he (Davis) was now representing other indigent defendants by appointment without objection from the State. This portion of the affidavit is related to one of the grounds for a new trial.

On May 23, 2005, appellant's counsel filed a request for an extension of time to file affidavits. In this written request, counsel alleged that he had been informed by the trial court that his written objection had been overruled. Attached to this request was the affidavit of Renee Monroe, appellant's mother, dated May 20, 2005, detailing incidents of difficulties between the appellant and the victim. We find no ruling on this motion or request.

16

The record does not reflect any further action. The motion for new trial was overruled by operation of law 75 days after the imposition of sentence. *See* Tex. R. App. P. 21.8 (a), (c). An evidentiary hearing on a defendant's timely filed and properly presented motion for new trial is necessary only if the motion and the accompanying affidavit(s) "raise matters not determinable from the record upon which the accused could be entitled to relief." *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Reyes v. State*, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). To be sufficient to entitle a defendant to a hearing, the motion for new trial and accompanying affidavit(s) "need not establish a *prima facie* case" for a new trial. *Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994); *McIntire v. State*, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985) (op. on reh'g). Rather, they must merely reflect that reasonable grounds exist for holding that such relief could be granted. *Martinez v. State*, 74 S.W.3d 19, 22 (Tex. Crim. App. 2002); *Jordan*, 883 S.W.2d at 665 (defendant need only assert reasonable grounds for relief, which are not determinable from the record in order to be entitled to a hearing); *Lempar v. State*, 191 S.W.3d 230, 235 (Tex. App.—San Antonio 2005, pet. ref'd). The purpose of a hearing is for a defendant to fully develop the issues raised in his motion for a new trial. *Jordan*, 883 S.W.2d at 665.

As a prerequisite to obtaining a hearing, the motion must be verified or supported by an affidavit specifically showing the truth of the grounds of attack. *Martinez*, 74 S.W.3d at 21; *Reyes*, 849 S.W.2d at 816. Although it is not specifically required by statute or the Texas Rules of Appellate Procedure that a motion for new trial be supported by an affidavit, Texas courts, by judicial fiat, have long held that when the grounds for a new trial are outside the record, a defendant must support his motion by his own affidavit or by the affidavit of someone with knowledge of

17

the facts. *Reyes*, 849 S.W.2d at 816; *McIntire*, 698 S.W.2d at 658; *Bearden v. State*, 648 S.W.2d 688, 690 (Tex. Crim. App. 1983); *Mallet v. State*, 9 S.W.3d 856, 865 (Tex. App.—Fort Worth 2000, no pet.); 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 41.23 (2d ed. 2001 & Supp. 2007). The requirement of an affidavit is to prevent "fishing expeditions" and is a prerequisite to obtaining a hearing and as a matter of pleading. *Reyes*, 849 S.W.2d at 816; *McIntire*, 698 S.W.2d at 658.

A defendant does not have an absolute right to a hearing on a motion for new trial. *Reyes*, 849 S.W.2d at 815; *Wright v. State*, 178 S.W.3d 905, 928 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). This is true for some of the reasons already mentioned. In addition, the written motion for new trial must be filed within 30 days after the date the trial court imposes or suspends sentence in open court. Tex. R. App. P. 21.4(a). The motion must be "presented" to the trial court within 10 days of its filing. Tex. R. App. P. 21.6. A motion for new trial is denied by operation of law when not ruled on by written order within 75 days after the date sentence was imposed or suspended in open court. Tex. R. App. P. 21.8(a), (c).

A motion for new trial alleging facts outside the record without supporting affidavits is not a proper pleading and is defective; a trial court does not err in refusing to grant a hearing on such a motion. *Flores v. State*, 18 S.W.3d 796, 798 (Tex. App.—Austin 2000, no pet.); *see also Wallace*, 106 S.W.3d at 108; *Alcott v. State*, 26 S.W.3d 1, 4-5 (Tex. App.—Waco 1999), *aff'd* 51 S.W.3d 596 (Tex. Crim. App. 2001).

Appellant's unsworn motion for a new trial was timely filed within the 30-day time limit. *See* Tex. R. App. P. 21.4(a). Appellant's affidavit, however, was not filed until the 31st full

18

day after the imposition of sentence in open court. A defendant may amend his motion for new trial before it is acted upon as long as it is amended within 30 days of the sentencing date. Tex. R. App. P. 21.4(b); *Flores*, 18 S.W.3d at 798.[7] Filing affidavits in support of a motion for new trial more than 30 days after sentencing is considered an untimely attempt to amend the motion. *Dugard v. State*, 688 S.W.2d 524, 529-30 (Tex. Crim. App. 1985), *overruled on other grounds*, *Williams v. State*, 780 S.W.2d 802, 803 (Tex. Crim. App. 1989); *Flores*, 18 S.W.3d at 798; *Mallet v. State*, 9 S.W.3d at 865.

Here, the belatedly filed affidavit was not before the trial court and the court did not, on that basis, abuse its discretion in failing to conduct a hearing on the motion for new trial or in allowing the motion to be overruled by operation of law. *See Burns v. State*, 844 S.W.2d 934, 936 (Tex. App.—Amarillo 1992, no pet.). The overruling of a motion for new trial at any stage of the proceedings could not be assigned as error where the motion was insufficient as a pleading. *Procella v. State*, 395 S.W.2d 637, 640 (Tex. Crim. App. 1965) (op. on reh'g).

Even if appellant's affidavit had been timely filed, appellant would not have been entitled to a hearing on his motion for new trial. The motion and affidavit together did not specifically show the truth of the grounds under attack, *Martinez*, 74 S.W.3d at 21, or raise matters

---

[7] Any amendment to the motion for new trial must also be completed within the same 30 days. *Mercier v. State*, 96 S.W.3d 560, 562 (Tex. App.—Fort Worth 2002, no pet.); *Mallet v. State*, 9 S.W.3d 856, 865 (Tex. App.—Fort Worth 2000, no pet.); *In re R.V., Jr.*, 9 S.W.3d 692, 693 (Tex. App.—Fort Worth 1999, pet. denied); *Guevara v. State*, 4 S.W.2d 771, 780 (Tex. App.—San Antonio 1999, no pet.); *Rangel v. State*, 972 S.W.2d 827, 838 (Tex. App.—Corpus Christi 1998, pet. ref'd). Rule 21.4(b) does not allow an amendment to the motion for new trial after the 30 days has expired. Tex. R. App. P. 21.4(b); *Mercier*, 96 S.W.3d at 562.

not determinable from the record that reflect reasonable grounds exist to entitle appellant to relief. *Wallace*, 106 S.W.3d at 108; *Reyes*, 849 S.W.3d at 816.

The motion for new trial made only bare assertions that:

[1]      Defendant's trial attorney failed to present easily obtainable evidence of defendant's innocence.

[2]      The State violated defendant's constitutional rights by filing and removing defendant's preferred counsel prior to trial.

[3]      Trial counsel failed to call witnesses which [sic] would have substantiated defendant's affirmative defense at trial.[8]

Appellant's affidavit was conclusory in nature. First, appellant alleged a matter clearly determinable from the record. He alleged Davis was removed, that he wished for Davis to continue his representation, and he "did not foresee any problems in his [Davis's] representation of me."

Appellant's affidavit also refers to seven named witnesses and "other witnesses" who would have testified as to the victim's history, propensity and reputation for violence, and "being

---

[8] The second issue, in a conclusory manner, alleges that the State, not the trial court, removed "preferred counsel" without designating counsel or the claimed constitutional rights violated.

The first and third issues relate to a claim of ineffective assistance of counsel at the guilt/innocence stage of the trial. One relates to appellant's "innocence" and the other refers to appellant's "affirmative defense." The first issue refers to "early obtainable evidence" without the evidence being revealed. The third issue alleges counsel's failure to call witnesses to substantiate appellant's affirmative defense. A defense is not an affirmative defense unless so labeled by the penal code. *See* Tex. Penal Code Ann. § 2.04 (West 2003). The motion does not identify the affirmative defense claimed. No affirmative defense was raised by the evidence or submitted to the jury.

20

the first aggressor." Appellant stated that "[s]ome of these witnesses would testify that the victim was under doctor's care for mental health problems." Appellant concluded that "[t]hese issues would have substantiated my defense." As in the motion, the defense was not designated.

Appellant's affidavit made no reference to or attempt to disclaim trial counsel's statement, in the jury's absence, as to why, with appellant's agreement, counsel would not offer witnesses and evidence as acts of violence between the victim and appellant. The record reflects that counsel, for the purposes of strategy, was fearful any such evidence would "open the door" for the State to show that appellant allegedly tried to drown the victim and choked another woman as well as other prejudicial acts.

A motion's bare assertions and an affidavit that is conclusory in nature and unsupported by facts are insufficient to put a trial court on notice that reasonable grounds exist for relief. *Jordan*, 883 S.W.2d at 665; *see also King*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000). Appellant's motion and affidavit fall in this category.

Still further, after the May 25, 2005 filing of appellant's motion for extension of time to file affidavits and attachment of the affidavit to appellant's motion, no ruling on the request was made and no further action was taken by anyone. It was appellant's burden to ensure that a hearing was held within the 75-day period after sentence. *Keen v. State*, 85 S.W.3d 405, 411 (Tex. App.—Tyler 2002, pet. ref'd); *see also Baker v. State*, 956 S.W.2d 19, 25 (Tex. Crim. App. 1997).

Under the circumstances presented, we find no abuse of discretion by the trial court in not conducting a hearing on the motion for new trial. The first point of error is overruled.

21

The judgment of conviction is affirmed.

_____

John F. Onion, Jr., Justice

Before Justices Patterson, Pemberton and Onion*

Affirmed

Filed:   April 16, 2008

Publish

---

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).