# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00706-CR

**Francisco Ramirez-Aguilar, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT NO. D-1-DC-16-206371, HONORABLE TAMARA NEEDLES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

After appellant Francisco Ramirez-Aguilar pleaded guilty to intoxication assault, *see* Tex. Penal Code § 49.07, the trial court accepted his plea and assessed punishment at confinement for 10 years in the Institutional Division of the Texas Department of Criminal Justice, *see id.* §§ 12.34 (setting punishment range for third degree felonies "for any term of not more than 10 years or less than 2 years"), 49.07(c) (stating that offense of intoxication assault generally is felony of third degree). In two points of error, appellant argues that he was denied counsel during the motion for new trial period and that the trial court erred by failing to conduct a hearing on his pro se motion for new trial. For the following reasons, we affirm the judgment of conviction.

### Background

Appellant was indicted for two counts of intoxication assault with a motor vehicle arising from an automobile accident that occurred in October 2016. In count one of the indictment,

the State alleged that appellant was operating a vehicle in a public place while intoxicated; that, "by reason of that intoxication," he caused his vehicle to collide into a vehicle operated by Sandra Heacock; and that she was seriously injured as a result of the accident. In count two, the State used the same language but alleged that appellant's girlfriend, who was a passenger in appellant's vehicle, was seriously injured as a result of the accident.

The State subsequently waived count two of the indictment, and the trial court accepted appellant's guilty plea as to count one at a hearing on September 7, 2017. A person who was serving as a translator and interpreter (the interpreter) was present for the hearing. The trial court confirmed with appellant that he had talked to his attorney about the case, that it was his intention to plead guilty, and that he did not speak or write English. The trial court's questions to appellant included asking about his satisfaction with his attorney's representation and appellant's understanding of his plea:

> The Court: Do you feel satisfied that [your trial attorney] has gone over [the plea] papers with you and explained them and made you understand them?
>
> [Appellant]: Yes.
>
> The Court: And then after understanding them, did you initial where he asked you and sign where he asked you to?
>
> [Appellant]: Yes.

The court also confirmed with appellant that he understood the possible range of punishment for a third degree felony; that he was not a U.S. citizen; that he had been warned of the consequences of his plea of guilty, including that he would be subject to deportation; that he waived his rights; and

that no one had threatened, forced, or made him plead guilty. The admitted exhibits at the hearing included the Plea of Guilty, Admonishments, Voluntary Statements, Waivers, Stipulation & Judicial Confession (Plea Agreement) that appellant signed and initialed. The interpreter also signed the Plea Agreement, attesting that she "accurately translated between defendant and counsel for defendant."

The trial court held a punishment hearing on September 29, 2017. Although the transcript from the hearing does not reflect that the interpreter was present, appellant responded appropriately to questions from the trial court, and he did not, at any time, complain that he did not understand or otherwise object that no interpreter was present during the hearing. The State's witness was Heacock who testified about her injuries from the accident, and the defense witness was appellant's "roommate for the past 11 years." The trial court took judicial notice of a presentence investigation report prepared by the community-supervision department and considered letters presented by the defense, although the letters were not admitted into the record. After asking appellant several questions, the trial court explained her concerns to appellant:

The Court: All right. Sir, in reviewing the PSI and the report that probation had made, it talks about you not having any children, any dependents. I see four children here in the room. And I understand that those must be [your girlfriend]'s children. Is that correct?

[Appellant]: Yes.

The Court: I've received a letter or two, one from [your girlfriend] as well as from the children. My concern, sir, is that when I read the presentence investigation report, there were allegations that at the time of the collision, [your girlfriend] was outside the vehicle but you tried to lead police to believe that she was driving the car. And regardless— and I'm not asking you to answer those questions. But that's very concerning to me, because I feel like, sir, with the letters that you have presented and the—and you may be the only father-type these

3

children have. But it appears that I'm trying to be deceived in believing that those are your children and they are not as much as I believe that you were trying to get out of that wreck and blame the wreck on [your girlfriend] and it was not her fault. Those items, sir, probably concern me as much or more than anything that I've heard here. It's concerning to me that Ms. Heacock has had to go through this. It's concerning that there was an opportunity for you to take responsibility from this—for this wreck from the very beginning. And I feel, sir, that you have not taken that responsibility.

After this exchange with appellant, the trial court accepted appellant's plea of guilty, found him guilty, and assessed punishment at confinement for ten years.

Appellant's trial attorney timely filed a motion for new trial, requesting a re-sentencing because "the judgment does not reflect the laws of this case" and arguing that evidence of appellant's girlfriend's observations "at the auto accident may be probative and material to the Court" and that "the materiality of this evidence is such as would probably bring about a different result in another trial or sentencing hearing." A few days later, appellant filed a pro se motion for new trial, arguing that his plea was involuntary and that he had received ineffective assistance of counsel. The trial court denied the pro se motion by written order. This appeal followed.[1]

**Analysis**

**Denial of Counsel**

In his first point of error, appellant argues that he "was denied counsel during the critical stage motion for new trial period because his trial counsel filed a wholly insufficient motion that cannot be justified by any conceivable trial strategy." He argues that his trial attorney "ceased

---

[1] Appellant is represented by different counsel on appeal.

4

to serve as 'counsel' by filing a completely non-functional motion" and that the record "rebuts any presumption that [he] acquiesced in his attorney's conduct." Based on his position that the motion for new trial filed by his attorney was "so legally insufficient as to constitute no motion at all," he argues that he essentially was denied counsel during a critical stage of the trial process and, therefore, that prejudice is presumed.

To support his contention, appellant relies on *Belcher v. State*, 93 S.W.3d 593 (Tex. App.—Houston [14th Dist.] 2002, published abatement order). In that case, our sister court, in a plurality opinion, found that defense counsel's silence during the motion for new trial hearing was "so egregious that it equate[d] to the absence of counsel, even though counsel was physically present." *Id.* at 599. During the hearing, the trial court had requested assistance in calculating the time frame to rule on the motion, but defense counsel failed to correct the trial court's miscalculation and "remained silent." *Id.* at 594–95. In this context, our sister court concluded that the defendant "was constructively denied the assistance of counsel at the motion for new trial hearing," "a critical stage of his criminal proceeding," and, therefore, that there was a "presumption of prejudice." *Id.* at 599. The court abated the appeal and remanded the case to the trial court to conduct a hearing on the motion for new trial. *Id.* at 600.

We do not find the analysis in *Belcher* instructive here. *See, e.g.*, *Pearson v. State*, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999) (explaining that plurality opinions are not binding precedent); *see also Jackson v. State*, 550 S.W.3d 238, 244 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (explaining that "*Belcher* did not establish controlling precedent" and that appellant had not cited and court had not found "any other court following *Belcher*" as to its analysis about when

there is presumption of prejudice). Further, even if we were to follow the analysis in that case, we cannot conclude that appellant's trial attorney's conduct during the motion for new trial period was "so egregious that it equate[d]" to the complete absence of counsel, such that prejudice from his conduct would be presumed. *See Al-Adli v. State*, Nos. 01-10-01109-CR, 01-10-01110-CR, 01-10-01121-CR, 2012 Tex. App. LEXIS 2448, at *12–14 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, pet. ref'd) (mem. op., not designated for publication) (finding *Belcher* not to be controlling or instructive and rejecting appellant's assertion that "lack of presentment of his new trial motion and lack of a request for a new trial hearing by his counsel was tantamount to having no representation at all during a critical stage"); *Sylvia v. State*, No. 03-10-00366-CR, 2011 Tex. App. LEXIS 7849, at *17–18 (Tex. App.—Austin Sept. 29, 2011, pet. ref'd) (mem. op., not designated for publication) (factually distinguishing *Belcher* and concluding that appellant's "deprivation of counsel claims [were] subject to the *Strickland* analysis for prejudice"). Thus, we conclude that appellant's deprivation of counsel claim is subject to the *Strickland* analysis for determining claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To establish ineffective assistance of counsel, an appellant must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Id.*; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The appellant must first demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Nava*, 415 S.W.3d at 307–08. The appellant must then show the existence of a reasonable probability—one sufficient to undermine confidence in the

6

outcome—that the result of the proceeding would have been different absent counsel's deficient performance. *Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. "[A]n appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (citing *Strickland*, 466 U.S. at 697).

We need go no further than to observe that appellant has not addressed the prejudice prong of the *Strickland* analysis in his briefing—how he suffered prejudice from his trial attorney's alleged deficient performance during the motion for new trial period. Thus, he has failed to demonstrate the existence of a reasonable probability—one sufficient to undermine confidence in the outcome—that the result of the proceeding would have been different absent his trial attorney's alleged deficient performance. *See Strickland*, 466 U.S. at 694; *Nava*, 415 S.W.3d at 308. On this basis, we overrule appellant's first point of error. *See Garcia*, 57 S.W.3d at 440 (explaining that failure to satisfy one prong of *Strickland* test negates court's need to consider other prong).

**Hearing on Pro Se Motion for New Trial**

In his second point of error, appellant argues that the trial court erred by failing to conduct a hearing on his pro se motion for new trial "because he stated grounds showing his plea was involuntary" and that he "did not receive effective assistance of counsel." Appellant requests that we abate the case to the trial court with instructions to hold a hearing on his motion for new trial.

We review a trial court's denial of a hearing on a motion for new trial under an abuse of discretion standard. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009); *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). We will reverse the denial of a hearing on

7

a motion for new trial only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Smith*, 286 S.W.3d at 339.

"The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) to complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009) (citing *Smith*, 286 S.W.3d at 338). "Such a hearing is not an absolute right." *Id.*; *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). "But a trial judge abuses his discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters which are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief." *Hobbs*, 298 S.W.3d at 199 (citing *Smith*, 286 S.W.3d at 338–39). Thus, appellate review "is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief." *Smith*, 286 S.W.3d at 340. Only if the defendant has satisfied both requirements does the trial court abuse its discretion in failing to hold a live hearing. *See id.* Further, to obtain a hearing on a motion for new trial alleging ineffective counsel, the defendant must allege sufficient facts from which the trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of the trial would have been different. *Id.* at 340–41.

As an initial matter, we observe that appellant concedes that there were "some technical pleading defects" in the pro se motion for new trial, including that it was not verified or

supported by affidavits.[2] *See Martinez v. State*, 74 S.W.3d 19, 21 (Tex. Crim. App. 2002) (explaining that, when motion for new trial raises matters not determinable from record, "the motion must be supported by affidavit specifically showing the truth of the grounds for attack" (citing *King v. State*, 29 S.W.3d 556, 569 (Tex. Crim. App. 2000))). "A motion for new trial alleging facts outside the record without supporting affidavits is not a proper pleading and is defective; a trial court does not err in refusing to grant a hearing on such a motion." *Klapesky v. State*, 256 S.W.3d 442, 454 (Tex. App.—Austin 2008, pet. ref'd) (citing *Flores v. State*, 18 S.W.3d 796, 798 (Tex. App.—Austin 2000, no pet.)); *see Cox v. State*, No. 03-12-00751-CR, 2014 Tex. App. LEXIS 9401, at *4–5 (Tex. App.—Austin Aug. 26, 2014, no pet.) (mem. op., not designated for publication) (explaining that hearing is not required when matter raised in motion for new trial is determinable from record and that, for matters that are not determinable from record, motion must be supported by affidavit "as a prerequisite to hearing" (quoting *Smith*, 286 S.W.3d at 339)).

Thus, to the extent that the pro se motion for new trial raised matters that were not determinable from the record, the lack of verification or supporting affidavits was a sufficient basis to support the trial court's decision not to conduct a hearing on the pro se motion. *See Klapesky*,

---

[2] Appellant also concedes that the pro se motion did not "specifically request a hearing," but the trial court ruled on the motion within 75 days from the date that it imposed sentence in open court. *See* Tex. R. App. P. 21.6 (generally requiring defendant to present motion for new trial within 10 days of filing, "unless the trial court in its discretion permits it to be presented and heard within 75 days from the date when the court imposes sentence or suspends sentence in open court"). Because appellant was represented by appointed counsel when he filed the pro se motion for new trial, the trial court could have disregarded the motion. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (explaining that defendant has no right to hybrid representation and that trial court may disregard pro se motions presented by defendants who are represented by counsel). The trial court, however, denied the pro se motion by written order.

256 S.W.3d at 454. And, to the extent that the motion for new trial raised matters that were determinable from the record, the trial court was not required to hold a hearing. *See Cox*, 2014 Tex. App. LEXIS 9401, at *4 (explaining that "hearing is *not* required when the matters raised in the motion for new trial are subject to being determined from the record" (quoting *Reyes*, 849 S.W.2d at 816)). In this context, we turn to our review of the substance of appellant's asserted claims that his plea was not voluntary and his trial attorney provided ineffective assistance of counsel.

### Voluntariness of Appellant's Plea

Among his arguments on appeal, appellant asserts that the trial court should have held a hearing on his pro se motion for new trial to develop a record considering the voluntariness of his plea. Appellant argues that the "trial court erred in denying a hearing to develop a record showing the failure to communicate with Appellant in Spanish affected the voluntariness of his decision to accept trial counsel's advice." In his pro se motion for new trial, appellant asserted that he was coerced into the plea and trial because he did not understand his attorney and does not speak English.[3]

---

[3] In the first ground raised in the pro se motion for new trial, appellant also sought a new trial on the ground that the verdict was excessive because he allegedly did not have a criminal history. On this record, we cannot conclude that appellant's sentence was excessive when it was within the punishment range for a third degree felony. *See* Tex. Penal Code § 12.34; *King v. State*, Nos. 03-12-00776-CR, 03-12-00777-CR, 03-12-00778-CR, 2013 Tex. App. LEXIS 4528, at *5 (Tex. App.—Austin Apr. 10, 2013, pet. ref'd) (mem. op., not designated for publication) (explaining that "[i]t is well established that a sentence falling within the applicable range of punishment generally does not violate the Eighth Amendment" but that "cases involving 'extreme sentences' that are 'grossly disproportionate' to the offense" may be considered cruel and unusual); *Gonzalez v. State*, No. 03-11-00282-CR, 2012 Tex. App. LEXIS 5065, at *8 (Tex. App.—Austin June 22, 2012,

Contrary to appellant's arguments, however, the reporter's record reflects that an interpreter was present during the plea hearing and that the interpreter attested that she provided translation services between appellant and his trial attorney.  Appellant initialed the Plea Agreement that he was "pleading guilty to the charged offense" and that the punishment range was "not more than ten years or less than 2 years."  Further, although the name of the interpreter and the language that appellant spoke were left blank, appellant signed below the following sentences:

> I understand the _____ language.  This entire document was read to me and fully explained to me in that language by my attorney with translation by an interpreter, namely: _____.  I understand this document completely, including the Court's admonishments, and I am aware of the consequences of my plea.  My attorney has discussed with me the law and facts applicable to this case, and I am satisfied that I have been effectively represented.  I understand if an appeal is made, written Notice of Appeal must be filed within 30 days of the sentencing date.

Directly following appellant's signature, his trial attorney signed below the following sentences:

> The Defendant does not adequately read the English language.  I have read this document to the Defendant in Spanish, with translation by [the interpreter], and [he] has indicated that [he] understands my explanation of this document.

And, following the attorney's signature, the interpreter signed the document, attesting that she had "accurately translated between defendant and counsel for defendant."

Although the record from the punishment hearing does not affirmatively reflect that the interpreter was present, the record demonstrates that appellant was able to communicate with the

---

pet. ref'd) (mem. op., not designated for publication) (explaining that "it is well settled that as long as the punishment assessed is within the range prescribed by the legislature in a valid statute, the punishment is not considered excessive, cruel, or unusual").

trial court, including responding appropriately to questions asked of him by the trial court. Appellant did not complain during the hearing that he was unable to understand the proceedings because of a language barrier or that an interpreter was not present.[4] *See Hernandez v. State*, 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, pet. ref'd) ("A defendant who does not request an interpreter waives the right to complain on appeal, unless the record otherwise demonstrates the defendant's lack of understanding of the proceedings."); *see also Garcia v. State*, 429 S.W.3d 604, 607–09 (Tex. Crim. App. 2014) (discussing defendant's waiver of interpreter); *Ramirez v. State*, No. 03-15-00727-CR, 2016 Tex. App. LEXIS 11434, at *6–7 & n.2 (Tex. App.—Austin Oct. 21, 2016, no pet.) (mem. op., not designated for publication) (overruling appellant's contention that he was denied right to have hearing translated and observing that "record shows that [defendant] understood the proceedings because it documents that [defendant] answered all of the questions posed to him by the court and similarly responded to statements made by the State").

On this record, the trial court, within its discretion, could have concluded that appellant's claim about the involuntariness of his plea based on communication issues was determinable from the record or, even without considering appellant's failure to support the pro se motion for new trial with an affidavit, that it was not a reasonable ground that could entitle him to relief. *See Hobbs*, 298 S.W.3d at 199 (concluding that no hearing on pro se motion for new trial was required because motion "failed to raise matters which were not determinable from the record" and that showed "that the defendant could potentially be entitled to relief"). Thus, we

---

[4] At the end of the plea hearing, the court set the punishment hearing based on the interpreter's statement that, if the hearing was going to be on the 29th, "it would be much easier for [her] if it was in the afternoon." The punishment hearing occurred on the 29th in the afternoon.

conclude that appellant failed to establish that the trial court abused its discretion when it did not conduct a hearing on the pro se motion for new trial to consider the voluntariness of appellant's plea.

**Ineffective Assistance of Counsel**

Appellant also asserts that the trial court erred by not conducting a hearing on his pro se motion for new trial based on the ground that his trial attorney provided ineffective assistance of counsel. In his pro se motion, appellant complained about his trial attorney's "advice to plead guilty and ask Judge for mercy" because of "the strength of State's case"; his attorney's strategy not to have a translator present; and his attorney's failure to contact appellant by mail or in person "to go over case or prepare for trial."

As noted above, the record reflects that an interpreter was present for the plea hearing and attested that she provided translation services between appellant and appellant's trial attorney. Further, although appellant listed complaints about his trial attorney's conduct, he did not allege facts to show that the outcome of the trial would have been different "but for" this conduct, such as facts supporting his assertion that contact between himself and his trial attorney prior to the trial would have made a difference or that he would not have pleaded guilty but would have insisted on going to trial. *See Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005) (quoting holding in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), that, to meet the prejudice prong of *Strickland*, defendant contending that plea was involuntary because attorney gave him erroneous information must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial").

13

On this record, even assuming that appellant's claim of ineffective assistance of counsel was not determinable from the record and not considering appellant's failure to support the pro se motion for new trial with an affidavit, the trial court, within its discretion, could have concluded that appellant failed to show that this claim was a reasonable ground that could entitle him to relief. *See Hobbs*, 298 S.W.3d at 199; *Smith*, 286 S.W.3d at 340–41; *see, e.g., Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (explaining that *"Strickland* claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim"); *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012) (explaining that direct appeal is usually inadequate vehicle for raising ineffective assistance of counsel because record is generally undeveloped (citing *Goodspeed*, 187 S.W.3d at 392)). Thus, we conclude that appellant failed to establish that the trial court abused its discretion when it did not conduct a hearing on the pro se motion for new trial to consider appellant's claim of ineffective assistance of counsel. *See Smith*, 286 S.W.3d at 340–41. We overrule appellant's second point of error.

## Conclusion

For these reasons, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   February 8, 2019

Do Not Publish

14