# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00478-CR

**Daniel Ray Cervantes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-08-904068, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Daniel Ray Cervantes of the offense of possession with intent to deliver a controlled substance, cocaine, in an amount less than one gram. *See* Tex. Health & Safety Code Ann. § 481.112(a) (West Supp. 2009). After finding true two enhancement paragraphs alleging prior convictions, the jury assessed punishment at fifteen years' imprisonment. In a single issue on appeal, Cervantes asserts that the district court abused its discretion in overruling his motion to suppress the evidence that formed the basis of his conviction. We will affirm the judgment of conviction.

## BACKGROUND

At the hearing on the motion to suppress, the district court heard evidence that, in the early afternoon hours of November 20, 2007, Officers Chris Garcia and Michelle Borton of the Austin Police Department were patrolling an area around a bus stop in south Austin at the

intersection of William Cannon and Bluff Springs. Garcia, who testified that he had over two years experience as an undercover narcotics officer, explained that the vicinity around the bus stop was considered by the police to be a "high drug area." Garcia added that he had made "numerous" drug arrests at that intersection.

That day, Garcia and Borton were parked in an unmarked police vehicle approximately 100 yards north of the bus stop while two undercover officers were walking around the area. One of the undercover officers reported to Garcia and Borton that "two transients were hanging out at the bus stop" when a Ford F-150 pulled up. The other undercover officer reported that he saw the transients approach the truck and "heard a discussion stating something about a 20 and maybe an 80." Garcia explained that, in his experience as an undercover officer, "a 20 on the street is a crack rock of cocaine."

"At that point," Garcia recalled, the transients "got in the vehicle and hung out in the vehicle for awhile until they decided to leave." As the truck began to travel south on Bluff Springs and then west on William Cannon, Garcia and Borton decided to follow it. They continued to follow the truck west on William Cannon until it pulled into a parking lot behind a fast-food chicken restaurant at the intersection of William Cannon and Manchaca. Garcia testified that the truck did not pull into a parking spot. Instead, "[i]t was just parked in a kind of a wide little drive area where you can come to this parking lot." Garcia and Borton parked nearby "behind other parked vehicles" and proceeded to conduct surveillance on the truck for several minutes.

2

Garcia testified about what he and Borton observed:

> We couldn't see what they were doing, but we did notice that no one got off the truck. At that point we just stayed watching it. It was kind of consistent with what I have experienced personally buying drugs. I could ask a person for a 20 and then they will tell me I'll be right back, I'm going to get you some, or give me your money and I'll be back and I will go get you some. I have personally been on the street in an undercover capacity where the person doesn't have the drugs on them so they will leave or they will go buy some from somebody else and try to up the price on me.

Garcia concluded, "At that point we kind of suspected maybe drug activity was going down because he did at the previous location ask for a 20. He was waiting, no one got out, no one was obviously buying chicken. So we just hung out."

After around five to ten minutes, a maroon sedan pulled into the parking lot. According to Garcia, the driver of the sedan, later identified as Cervantes, was on his cell phone and "looking directly at this truck." The sedan then pulled into a parking spot while the pickup truck drove into another parking spot directly behind the sedan. Immediately thereafter, one of the passengers in the truck exited that vehicle and walked toward and entered the sedan. At this point, Garcia testified, he and Borton "had reason to believe a drug transaction was occurring." Garcia and Borton then "jumped out" of their vehicle and approached the sedan with their weapons drawn. Garcia explained, "I approached in a tactical manner, kept my gun at a low ready approach, [and] instructed the people . . . 'Put your hands up, put your hands up.'"

Borton testified that, as she approached the vehicle, she saw Cervantes "looking down" at his lap. Borton then opened the driver's side door and ordered Cervantes to "[s]how me your hands." Cervantes complied. Borton testified, "As soon as I opened the car door, I could see

3

what was on his lap"—a cell phone and a digital scale. When asked if she saw anything within "arm's reach" of Cervantes, Borton testified, "In the cup holder I saw a baggie with a big knot on it." She added that the baggie was "in plain view" and "had something white in it." When asked what this white substance appeared to be, Borton, who had over three years experience working narcotics, testified, "In my training and experience, it would be some form of cocaine." Cervantes was then arrested for possession.

After Cervantes and the person who had entered the sedan were secured in handcuffs, Borton searched the sedan and found another baggie of crack cocaine in the center console. In addition to the baggies of cocaine and the digital scale, Borton found a "large amount of currency" in Cervantes's pocket, which she testified was consistent with drug dealing. Additionally, Garcia testified that when he arrested the person who had entered the sedan, that person "had a $20 bill within arm's reach of himself claiming that it wasn't his."

In his motion to suppress, Cervantes asserted that the evidence found in the sedan and on Cervantes's person was the result of an illegal search and seizure. The district court denied the motion to suppress, and the case proceeded to trial. Cervantes was subsequently convicted and sentenced. This appeal followed.

## STANDARD OF REVIEW

"A trial court's ruling on a motion to suppress, like any ruling on the admission of evidence, is subject to review on appeal for abuse of discretion." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). "'In other words, the trial court's ruling will be upheld if it is reasonably supported by the

4

record and is correct under any theory of law applicable to the case.'" *Id*. (quoting *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008)). "In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

We are to "afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We are to "afford the same amount of deference to trial courts' rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id*.

## ANALYSIS

Cervantes brings a single issue on appeal asserting that the district court abused its discretion in denying his motion to suppress. According to Cervantes, the initial detention in the parking lot, particularly Officer Borton's action in opening his car door, was unlawful because the officers did not have reasonable suspicion to believe that a criminal offense was being committed. Cervantes contends that because this initial detention was, in his view, unlawful, everything that followed was also illegal, including the seizure of the cocaine allegedly in "plain view" and the search of his vehicle following the arrest that yielded additional cocaine.

We first observe that during trial, when the State offered the cocaine into evidence, defense counsel affirmatively stated, "No objection, Your Honor." As a general rule, when a pretrial

5

motion to suppress evidence is overruled, the defendant need not subsequently object at trial to the same evidence in order to preserve error on appeal. *See Livingston v. State*, 739 S.W.2d 311, 334 (Tex. Crim. App. 1987); *Figueroa v. State*, 250 S.W.3d 490, 514 (Tex. App.—Austin 2008, pet. ref'd). However, when the defendant affirmatively asserts during trial he has "no objection" to the admission of the complained-of evidence, he waives any error in the admission of the evidence that otherwise would have been preserved by the pre-trial objection and ruling. *See Holmes v. State*, 248 S.W.3d 194, 196 (Tex. Crim. App. 2008); *Harris v. State*, 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *Boykin v. State*, 504 S.W.2d 855, 857 (Tex. Crim. App. 1974); *Figueroa*, 250 S.W.3d at 514. By affirmatively stating "no objection" at trial to the admission of the cocaine, Cervantes waived any complaint on appeal concerning the admissibility of this evidence that otherwise would have been preserved at the suppression hearing. *See Holmes*, 248 S.W.3d at 201; *Moody v. State*, 827 S.W.2d 875, 889 (Tex. Crim. App. 1992); *Klapesky v. State*, 256 S.W.3d 442, 449 (Tex. App.—Austin 2008, pet. ref'd).[1]

However, there was no waiver regarding the other contraband found in the vehicle and on Cervantes's person, specifically the digital scale and the currency. Therefore, we consider whether the district court abused its discretion in admitting this evidence.[2]

---

[1] In its brief, the State notes that the complaint about the cocaine was waived but asks this Court to nevertheless "rule on the substance of the appellant's claims." However, the court of criminal appeals has held that preservation of error is a systemic requirement on appeal, and if an issue has not been preserved for appeal, the reviewing court should not address the merits of that issue. *See Ford v. State*, No. PD-1753-08, ___ S.W.3d ___, 2009 Tex. Crim. App. LEXIS 1440 (Tex. Crim. App. Oct. 21, 2009) (citing *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005)).

[2] Although these items were not offered into evidence as exhibits, the officers testified at trial about finding them, and the State used this evidence to make its case that Cervantes, rather than merely possessing the cocaine, had the intent to deliver it.

6

We first address the digital scale that, according to Borton, was found in Cervantes's lap when she opened the door to his vehicle. The State argues that the seizure of the digital scale was permissible under the "plain view" exception to the warrant requirement. "A seizure of an object is lawful under the plain view exception if three requirements are met. First, law enforcement officials must lawfully be where the object can be 'plainly viewed.' Second, the 'incriminating character' of the object in plain view must be 'immediately apparent' to the officials. And third, the officials must have the right to access the object." *Keehn v. State*, 279 S.W.3d 330, 334 (Tex. Crim. App. 2009) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Cervantes claims that the first requirement was not satisfied here. He contends that the officers did not have the right to open his car door and, therefore, Borton was not lawfully in a position to view the contraband.

In the context of a plain-view seizure, an officer has a right to be where she is if "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton*, 496 U.S. at 136. A temporary detention does not violate the Fourth Amendment when the detaining officer can point to specific articulable facts, which taken together with rational inferences from those facts, lead her to reasonably conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Here, the district court would not have abused its discretion in finding that the initial detention did not violate the Fourth Amendment.

Garcia and Borton both testified that, based on their years of experience working narcotics, they had reason to believe that Cervantes and the person who had entered his sedan were

engaged in a drug transaction.  Garcia testified that it had been reported to him that one of the people in the truck they had been following had said "something about a 20 and maybe an 80."  According to Garcia, "a 20 on the street is a crack rock of cocaine."  Therefore, the district court could have impliedly found that Garcia had reason to believe that this person could have been looking to buy at least one and possibly four rocks of crack cocaine.  Also, Garcia and Borton both testified that the truck they had been following was coming from a "high drug area."  Moreover, when the truck pulled into the parking lot of the fast-food restaurant, according to Garcia, "no one [got out of] the truck."  Garcia testified that this behavior was consistent with drug activity.  He explained, "I could ask a person for a 20 and then they will tell me I'll be right back, I'm going to get you some, or give me your money and I'll be back and I will go get you some.  I have personally been on the street in an undercover capacity where the person doesn't have the drugs on them so they will leave or they will go buy some from somebody else and try to up the price on me."

At this point, Garcia testified, he and Borton suspected drug activity.  In Garcia's words, "He was waiting, no one got out, no one was obviously buying chicken."  The truck continued to wait in the parking lot for approximately five to ten minutes until Cervantes arrived in his sedan.  Garcia testified that when the sedan arrived, Cervantes was on his cell phone and "looking directly at this truck."  Cervantes pulled into a parking spot and the truck parked behind the sedan.  Then, one of the people in the truck who had earlier inquired about "a 20" and who had come from what the officers had described as a "high drug area" got out of the truck and entered the sedan.  Based on the totality of the above circumstances, the district court would not have abused its discretion in finding that the officers had reasonable suspicion to believe that a drug transaction

8

was occurring and, therefore, to detain the occupants of the sedan. *See Woods*, 956 S.W.2d at 38; *see also United States v. Cortez*, 449 U.S. 411, 418 (1981) ("[A] trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.").

The district court also could have impliedly found that, once the officers decided to detain the suspects, it was reasonable for them to exercise safety precautions upon their approach. Garcia testified about his safety concerns as he approached the vehicles:

> I kind of approached in a tactical way just for my safety. It was obviously just [Borton] and I, four subjects. Once again, based on my training and experience, drug dealers are known to carry some sort of weapon, so therefore for my safety, I was obviously outnumbered between the suspects and officer ratio, I did draw my weapon.

Borton also expressed safety concerns in her testimony. She explained that she could not see Cervantes's hands as she approached his vehicle and that he was "looking down." Thus, the district court could have impliedly found that Borton, in opening the door to the sedan, was simply trying to protect herself and her partner by making sure that Cervantes did not have access to any weapons. *See Carmouche v. State*, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000) (concluding that because "weapons and violence are frequently associated with drug transactions," it is reasonable for officers to believe that individual with whom they were dealing was armed and dangerous); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 118 (1977) (citing to study in which approximately 30% of police shootings occurred when police officer approached suspect seated in automobile). Accordingly, the district court would not have abused its discretion in finding that Borton's action

in opening the car door was lawful under the circumstances and that the first requirement of the plain view exception was satisfied.

Nor would the district court have abused its discretion in finding that the other two requirements of the plain view exception were satisfied. Borton testified that when she saw the digital scale, she considered it to be a "link" to narcotics. When asked how a scale is linked to narcotics, Borton testified, "Because it is weighed out to whatever is being purchased. You give them the amount they are purchasing." Based on this testimony and Borton's prior testimony about her experience working narcotics, the district court could have impliedly found that the incriminating nature of the digital scale was immediately apparent to Borton. *See Ramos v. State*, 934 S.W.2d 358, 365 (Tex. Crim. App. 1996) (for evidence to be "immediately apparent," officer must have probable cause to associate item with criminal activity). As for the third requirement, the district court would not have abused its discretion in finding that Borton had a legal right to seize the scale once she also found what she believed to be cocaine in cup holder of the vehicle. The district court could have impliedly found that Borton had probable cause at that point to arrest Cervantes for possession. The scale, which was found on Cervantes's lap, could then be seized as part of a lawful search incident to arrest. *See Chimel v. California*, 395 U.S. 752, 763 (1960) (holding that search incident to arrest is limited to arrestee's person and area "within his immediate control"—meaning "the area from within which he might gain possession of a weapon or destructible evidence").

As for the currency that was found, Borton testified at the suppression hearing that a "large amount" was found in Cervantes's pocket during his arrest, and Garcia testified that the $20 bill was found "within arm's reach" of the person who had entered the sedan and who was also

10

arrested.  Thus, the district court would not have abused its discretion in finding that this evidence was obtained pursuant to a lawful search incident to arrest.  *See id.*

We cannot conclude on this record that the district court abused its discretion in denying Cervantes's motion to suppress.  Accordingly, we overrule Cervantes's sole issue on appeal.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   December 30, 2009

Do Not Publish

11