NUMBER 13-08-00734-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

BENJAMIN CURCURU,      
                                                    Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                            Appellee.

                                                                                                                     
  

 

On appeal from the 319th
District Court 

of Nueces County,
Texas.

 
                                                                                                                    

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Vela  

Memorandum Opinion by
Justice Rodriguez

                                                                                    

            Appellant Benjamin Curcuru challenges his
conviction by a jury for aggravated sexual assault of a child, for which he was
sentenced to forty-five years' incarceration.  See Tex. Penal Code Ann. § 22.021(a)(1)(B)
(Vernon Supp. 2010).  By four issues, Curcuru argues that:  (1) the trial court
erred in admitting evidence of extraneous misconduct; (2) the trial court erred
in refusing to admit certain evidence relevant to his defense; (3) the trial
court erred in admitting the testimony of one of the State's expert witnesses
because the witness was not qualified as an expert; and (4) he received
ineffective assistance of counsel.  We affirm.

I.          Background[1]

 

            Curcuru was indicted for aggravated sexual
assault of a child as follows:

[O]n or about October 29, 2007, in Nueces County, Texas,
[Curcuru] did then and there intentionally or knowingly cause the penetration
of the anus of [A.G.], a child younger than 6 years of age and not the spouse
of [Curcuru], by [Curcuru]'s sexual organ and/or by [Curcuru]'s finger . . .
and/or by an object unknown to the Grand Jury.[[2]]

 

See id. § 22.021(a)(1)(B)(i).  He
pleaded not guilty to the charge.  After an eight-day trial during October
6-20, 2008, the jury returned a guilty verdict, sentenced Curcuru to forty-five
years' incarceration in the Institutional Division of the Texas Department of
Criminal Justice, and assessed a $10,000 fine.  Curcuru's sentence was
announced in open court on October 21, 2008.

            On November 20, 2008, Curcuru filed a motion
for new trial, in which he argued that:  (1) the trial court erred in admitting
extraneous misconduct evidence; (2) the trial court erred in refusing to admit
certain evidence offered by Curcuru; (3) jury misconduct denied him a fair and
impartial trial; (4) he received ineffective assistance of counsel; and (5)
prosecutorial misconduct prejudiced his trial.  No affidavits were attached to
the motion.  On December 11, 2008, Curcuru filed an amended motion for new
trial; the amended motion contained the first four arguments from the original
motion but dropped the prosecutorial misconduct argument.  The State responded
to the original motion for new trial but objected to the amended motion as
untimely filed.  On December 18, 2008, Curcuru filed a motion for leave to file
his amended motion for new trial; Curcuru attached to this motion for leave
several affidavits in support of his ineffective assistance argument.  

On December 19, 2008, the parties
appeared before the trial court to argue the motion for new trial.  At this
proceeding, the State objected to Curcuru's amended motion and the affidavits
as untimely filed, and the trial court expressly declined to consider the
amended motion and affidavits because they were filed outside the thirty-day
deadline for such motions and amendments.[3] 
See Tex. R. App. P.
21.4(a)-(b).  No other evidence was presented at the proceeding, but the trial
court did allow Curcuru to submit his affidavits as "exhibits . . . for
appellate purposes."  The trial court denied Curcuru's motion.  This
appeal followed.

II.         Extraneous
Misconduct

 

            In his first issue, Curcuru argues that the
trial court erred in admitting the following evidence at trial:  testimony by
E.F., A.G.'s mother and Curcuru's girlfriend at the time of the alleged
assault, regarding the sexual preferences and habits of Curcuru; testimony by
Austin Nicole DeBord regarding her sexual relationship with Curcuru when she
was thirteen to fourteen years old; and video testimony by C.M., the son of one
of Curcuru's former girlfriends, that Curcuru had sexually assaulted him while
Curcuru was dating C.M.'s mother.  

Specifically, Curcuru complains of the
following testimony by E.F.:

[Prosecutor]:              In
your opinion, did you and Benjamin [Curcuru] have a normal sex life?

 

[E.F.]:                          No.      

 

[Prosecutor]:              Okay. 
Did he seem to have the same sexual interest in you that the other men had had?

 

[E.F.]:                          No.

 

[Prosecutor]:              Okay. 
Can you explain what would happen at night when you were sleeping?

 

[E.F.]:                          I would be woken up by
him rolling me over –

 

[Prosecutor]:              Rolling you over where?

 

[E.F.]:                          Rolling me onto my
stomach.

 

[Prosecutor]:              Not on your back, but your
stomach.

 

[E.F.]:                          Onto my stomach.

 

[Prosecutor]:              Okay.

 

[E.F.]:                          And
he would enter me from that position.  He would – I – Sorry.

 

[Prosecutor]:              Okay. 
So you would be asleep.  Did he – was he interested in missionary style?

 

[E.F.]:                          No.

 

                                    . . . .

 

[Prosecutor]:              Now,
let's talk about a little bit, when he would wake you up and roll you on your
stomach, where would he place his penis?

 

[E.F.]:                          He
would place it, either inside me or in between my underwear and butt.

 

[Prosecutor]:              The common term is "dry
humping."

 

[E.F.]:                          Yes.

 

                                    . . . .

 

[Prosecutor]:              Okay. 
Were you willing to have regular intercourse with him?

 

[E.F.]:                          Yes.

 

[Prosecutor]:              And
in the course of the rubbing up against your bottom, did you get the impression
that he wanted to put his penis in your anal area?

 

[E.F.]:                          Yes.

 

                                    . . . .

 

[Prosecutor]:              Um,
did this type of, um, sexual interest of his, he always – would it be fair to
say he always wanted you on your stomach?

 

[E.F.]:                          Yes.

 

[Prosecutor]:              And he wanted to be around
your bottom area.

 

[E.F.]:                          Yes.

 

Curcuru complains of the following
testimony by DeBord, who stated that she was twenty years old at the time of
trial and then specifically testified as follows:

[Prosecutor]:              Okay. 
When you were[] younger did you come to know someone named Benjamin Curcuru?

 

[DeBord]:                   Yes.

 

[Prosecutor]:              How old were you?

 

[DeBord]:                   13, 14.

 

[Prosecutor]:              Okay.  And how old was
Benjamin?

 

[DeBord]:                   24?  25?

 

[Prosecutor]:              Okay. 
And did you – did Benjamin have a sexual relationship with you at that age?

 

[DeBord]:                   Yes, he did.

 

[Prosecutor]:              Okay.  And would he enter your
body with his penis?

 

[DeBord]:                   Yes.

 

[Prosecutor]:              And
what part of your body would he enter with his penis?

 

[DeBord]:                   My anus.

 

[Prosecutor]:              Okay.  Did this happen on few
or many occasions?

 

                                    . . . .

 

[DeBord]:                   Many, many times over the
course of two years.

 

[Prosecutor]:              Okay.  Like 20, 30, 40 times?

 

[DeBord]:                   Um, 20 or above.

 

[Prosecutor]:              Okay.  Did he prefer anal,
instead of vaginal?

 

[DeBord]:                   No vaginal intercourse.

 

[Prosecutor]:              Just anal.

 

[DeBord]:                   And oral.

 

                                    . . . .

 

[Prosecutor]:              And did he know your age?

 

[DeBord]:                   Yes, he did.

 

Finally, Curcuru complains of the video statement
of C.M. that was admitted by the trial court and played for the jury.  C.M.'s
mother dated Curcuru in 2001.  In the video, C.M.—who was eleven years old at
the time of the video—recounted several incidents when he was three to four
years old in which he was awakened in the middle of the night by someone
"punching" him in the back and biting his toes; C.M. also stated that
he felt like he was being stabbed by a knife in his back.  C.M. stated that he
would scream and that first Curcuru and then his mother would rush into his
bedroom.  C.M. stated that he glimpsed Curcuru's face one time in his bedroom
during one of these alleged incidents.  In the video, C.M. also stated that
Curcuru taught him curse words and encouraged C.M. to use those words in front
of his mother.

With respect to C.M.'s testimony, in
particular, Curcuru argues that the State failed to give proper notice of its
intent to present that testimony.  See Tex.
R. Evid. 404(b); Tex. Code Crim.
Proc. Ann. art. 38.37, § 3 (Vernon Supp. 2010).  With respect to all of
the three foregoing testimonies, Curcuru argues that each was inadmissible
because the evidence served only to prove actions in conformity with character,
in violation of rule 404(b), and the prejudice of the evidence on the jury
outweighed its probative value, in violation of rule 403.  See Tex. R. Evid. 403, 404(b).

A.        Standard
of Review

            The standard of review for the admissibility
of evidence is abuse of discretion. Casey v. State, 215 S.W.3d 870, 879
(Tex. Crim. App. 2007).  Under an abuse of discretion standard, we will uphold
the decision of the trial court concerning the admissibility of evidence unless
the ruling rests outside the zone of reasonable disagreement.  Id.  

B.        Inclusion
of C.M.'s Testimony in Pre-trial Disclosures

            We first address Curcuru's argument that the
State failed to disclose the testimony of C.M. prior to trial as required by
rule 404(b).[4] 
See Tex. R. Evid. 404(b). 
On February 7, 2008, Curcuru filed his request with the State for evidence of
extraneous crimes, misconduct, and other bad acts intended to be used by the
State at trial.  On July 31, 2008, the State filed its notice of possible
expert witnesses, and on August 1, 2008, the State filed its notice of possible
extraneous offenses and bad acts evidence.  Neither notice mentioned C.M. as a
possible witness.  On October 6, 2008, the first day of voir dire, the State
supplemented its prior notices; this supplement was the first written notice
that contained C.M. as a possible witness.[5]

However, although Curcuru objected to
the testimony of C.M. on relevancy grounds, he did not object to C.M.'s
testimony on the basis that the State failed to give him timely notice.  See
Tex. R. App. P. 33.1(a); Brown
v. State, 880 S.W.2d 249, 252 (Tex. App.–El Paso 1994, no pet.) (holding
that appellant failed to preserve his failure-to-notice complaint where
"defense counsel did not object that the State failed to give timely
notice of its intent to use" certain extraneous misconduct).  Curcuru
therefore did not preserve this issue for appeal.  We overrule Curcuru's first
issue to the extent it complains of the failure by the State, if any, to timely
notify Curcuru of C.M.'s testimony.

C.        Character
Conformity and Probative Value v. Potential for Prejudice—Rules 403 and 404(b)

 

            Having determined that Curcuru's
failure-to-notice complaint was not preserved, we now address Curcuru's second
argument that the testimony of E.F., DeBord, and C.M. served only to prove
character conformity and was more prejudicial than probative.  See Tex. R. Evid. 403, 404(b).  

1.         Applicable Law

The general rule is that the
defendant is to be tried only for the offense charged, not for any other crimes
or for being a criminal generally.  However, evidence of extraneous acts of
misconduct may be admissible if (1) the uncharged act is relevant to a material
issue in the case, and (2) the probative value of that evidence is not
significantly outweighed by its prejudicial effect.  Because the propensity to
commit crimes is not a material fact in a criminal case, Rule 404(b) explicitly
prohibits the admission of uncharged acts to prove conduct in conformity with a
bad character.

 

One of the main rationales for
admitting extraneous offense evidence is to prove the identity of the
offender.  Here, the theory of relevancy is usually that of modus operandi in
which the pattern and characteristics of the charged crime and the uncharged
misconduct are so distinctively similar that they constitute a
"signature."  Usually, it is the accretion of small, sometimes
individually insignificant, details that marks each crime as the handiwork or
modus operandi of a single individual.  No rigid rules dictate what constitutes
sufficient similarities; rather, the common characteristics may be proximity in
time and place, mode of commission of the crimes, the person's dress, or any
other elements which mark both crimes as having been committed by the same
person.  But if the similarities are "generic," i.e., typical to this
type of crime, they will not constitute a “signature” crime.  Sometimes,
however, the "signature" is one unique characteristic.  For example,
suppose that three bank robberies are committed over a four-year period in different
cities in which the robber used an antique silver crossbow.  This scenario is
so unusual that it is highly likely that each robbery was committed by the same
person using the same antique silver crossbow.  This is "the mark of
Zorro" mode of proving identity; it is a remarkably unusual fact, in which
a single detail suffices to establish identity

 

Segundo v. State, 270 S.W.3d 79, 87-88 (Tex.
Crim. App. 2008) (internal citations omitted); see Tex. R. Evid. 404(b); Page v. State,
213 S.W.3d 332, 336 (Tex. Crim. App. 2006).  We give considerable deference to
the trial judge in determining whether identity is, in fact, disputed.  Segundo,
270 S.W.3d at 86 (citing Page v. State, 137 S.W.3d 75, 78 (Tex. Crim.
App. 2004); Lane v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)). 
"It may be placed in dispute by the defendant's opening statement or
cross-examination, as well as by affirmative evidence offered by the
defense."  Id.

And "although the modus operandi
theory of admissibility under Rule 404(b) usually refers to evidence offered to
prove the identity of a specific person, its use is not so limited in the
law."  Casey, 215 S.W.3d at 881.  Modus operandi may also be used
to show "lack of consent, motive, and the manner of committing an
offense."  Id.  In fact, the court of criminal appeals has noted
that "'evidence of a remarkably similar act might be admissible to prove
the corpus delicti (the crime itself), intent, or lack of consent'" under
this modus operandi theory.  Id. (quoting Daggett v. State, 187
S.W.3d 444, 453 n. 18 (Tex. Crim. App. 2005)) (other citations omitted).

Even if extraneous misconduct evidence
is not barred under rule 404(b), the opponent of the evidence may further
object under rule 403.  Casey, 215 S.W.3d at 879 (citing Santellan v.
State, 939 S.W.2d 155, 169-70 (Tex. Crim. App. 1997)).  Under rule 403,
relevant evidence "may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice . . . ."  Tex. R. Evid. 403.  “Probative value”
means "the inherent probative force of an item of evidence—that is, how
strongly it serves to make more or less probable the existence of a fact of
consequence to the litigation—coupled with the proponent's need for that item
of evidence."  Casey, 215 S.W.3d at 879 (citing Gigliobianco v.
State, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)).  “Unfair prejudice”
means a tendency to suggest decision on an improper basis.  Id.
(citations omitted).  "Evidence might be unfairly prejudicial if, for
example, it arouses the jury's hostility or sympathy for one side without
regard to the logical probative force of the evidence."  Id. at 880
(citations omitted).  To determine whether the prejudicial value of the
admitted relevant evidence outweighs its probative value, we may consider the
following factors:  (1) the probative value of the evidence; (2) the potential
of the evidence to impress the jury in some emotional, yet indelible way; (3)
the proponent's need for the evidence; and (4) the time the proponent needs to
develop the evidence.  Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim.
App. 2004).

"Rule 403 favors admissibility of
relevant evidence, and the presumption is that relevant evidence will be more
probative than prejudicial."  Montgomery v. State, 810 S.W.2d 372,
389 (Tex. Crim. App. 1991); see Casey, 215 S.W.3d at 879
("In keeping with the presumption of admissibility of relevant evidence,
trial courts should favor admission in close cases.").  "Relevant
evidence" is "evidence having any tendency to make the existence of
any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence."  Tex. R. Evid. 401.  

 

2.         Analysis

Curcuru made his opening statement after
the State rested its case-in-chief; it consisted of the following:  

I only have a very brief opening statement.  You've heard
most of the facts so far.  Obviously, we contend and we have contended that
Benjamin Curcuru did not do this heinous crime, that this heinous crime was
done by [E.F.] and no one else, the "horrible person," says the
prosecutor, upon whom this case is based. . . .  We expect to introduce various
witnesses who are familiar with Mr. Curcuru and with his reputation, and to
flush out some facts regarding this case.

 

Curcuru also questioned numerous witnesses about the
abusive conduct of E.F. toward A.G.  Specifically, he questioned witnesses
concerning:  statements made by A.G. to various people that "Mommy
hit" and "Mommy poke"; his theory that E.F. was manipulative;
and alleged attempts by E.F. to persuade Curcuru to take the blame for A.G.'s
injuries.  Thus, in both his opening statement and his questioning of
witnesses, Curcuru placed his identity as the perpetrator squarely at issue,
and the trial court did not abuse its discretion in so determining.  See
Segundo, 270 S.W.3d at 86.

The State's theory of relevance for
offering the extraneous misconduct evidence was based on establishing Curcuru's
modus operandi and identity.  At trial, the State asserted that Curcuru
intentionally targeted E.F. and A.G. as a vulnerable family.  The State
asserted that Curcuru attempted to alienate A.G. from E.F., in part, by
teaching A.G. to curse at her mother so that E.F. would punish A.G., thus
driving A.G. into a closer relationship with Curcuru.  Part of the State's
theory at trial was also that Curcuru had a preference for anal intercourse and
that, when he could not have it with adult women, he looked to children for
that release.  

The evidence about which Curcuru
complains shows a modus operandi that the State used both in its identifying of
Curcuru as the perpetrator and in establishing the manner in which Curcuru
committed the offense.  See Casey, 215 S.W.3d at 881.  E.F's testimony
regarding her impression that Curcuru preferred anal intercourse connects
Curcuru to the anal sexual act with A.G. alleged in the indictment.  DeBord's
testimony—that Curcuru had anal sex with her when she was thirteen to fourteen
years old—similarly identified Curcuru.  In addition, from C.M.'s statements in
his outcry video regarding the pains he felt on his backside, the jury could
have reasonably inferred that Curcuru was penetrating C.M.'s anus.  Finally,
C.M.'s statements that Curcuru taught him curse words to say to his mother support
the State's theory that part of Curcuru's pattern was to cause animosity
between the child and parent and create a bond with Curcuru.  

We conclude that "the pattern and
characteristics" of the alleged offense against A.G. were so
"distinctively similar" to the misconduct adduced in the foregoing
evidence that a "signature" by Curcuru was apparent.  See Segundo,
270 S.W.3d at 87-88.  Each of the complained-of testimonies was, therefore,
properly admitted as a part of the State's case to establish Curcuru's identity
as the actor who sexually assaulted A.G and to establish the manner in which
the offense was committed.  See id.; see also Casey, 215 S.W.3d
at 881.  In other words, the extraneous offense evidence was relevant to a
material issue in the case, serving to prove identity and modus operandi and
not character conformity only.  See Tex.
R. Evid. 404(b).

 

With regard to whether the foregoing
evidence was more prejudicial than probative, we also conclude that it was
not.  First, the State's need for the evidence was considerable.  See Erazo,
144 S.W.3d at 489.  As was noted by the trial court, the State's case was based
almost entirely on circumstantial evidence.  There was no direct evidence
regarding how A.G. obtained the tearing injuries to her anus—no one witnessed
any actor penetrating A.G.'s anus.  Further, relatively little time was spent
by the State developing the evidence.  See id.  In an eight-day trial, the
small portion of E.F.'s testimony about which Curcuru complains, the brief
testimony of DeBord, and the approximately thirty-minute video of C.M. did not
occupy a significant amount of time such that the jury might have been
disproportionately impacted by this evidence rather than the bulk of the other
evidence advanced by both parties.  

And although the content of the
complained-of evidence was certainly emotional, its probative value was high.  See
id.  It was critical to the State's establishing of Curcuru's modus
operandi, a matter that was clearly disputed by Curcuru when he put his
identity at issue.  See Segundo, 270 S.W.3d at 90 (concluding that
evidence that established the defendant's modus operandi was more probative
than prejudicial); see also Casey, 215 S.W.3d at 882-83 (reasoning that
extraneous misconduct evidence, though inflammatory, was more probative than
prejudicial because it was relevant to the issue of consent, which was the
ultimate contested issue at trial).  This evidence was highly relevant.  It
made the existence of a material and, perhaps, the ultimate disputed fact at
trial—Curcuru's identity as the perpetrator—more probable.  See Tex. R. Evid. 401.  We are mindful of
the long-standing assumption that relevant evidence will be more probative than
prejudicial and that rule 403 favors admissibility and, thus, cannot conclude
that the trial court erred in determining that it was admissible.  See
Montgomery, 810 S.W.2d at 389; see also Tex. R. Evid. 403.

In sum, because the testimonies of E.F.
and DeBord and the video statement of C.M. were admitted for purposes other
than character conformity and were more probative than prejudicial, we conclude
that the trial court did not abuse its discretion in admitting the evidence.  See
Casey, 215 S.W.3d at 879; Tex. R.
Evid. 403, 404(b).  We overrule Curcuru's first issue.

III.        Exclusion
of Evidence

 

            By
his second issue, Curcuru argues that the trial court erred in excluding the
following evidence:  (1) the police statement of Sherry DeBord, Austin Nicole
DeBord's mother; (2) A.G.'s video outcry interview by Ricardo Jimenez; (3) DNA
test results; (4) the police statement of H.T., C.M.'s mother; (5) Child
Protective Services (CPS) records related to A.G. and her mother; and (6)
A.G.'s mother's statements to the district attorney and police.

At the outset, we conclude that Curcuru
has inadequately briefed his argument on the first, third, fourth, fifth, and
sixth pieces of evidence about which he complains.  In his brief, Curcuru cites
no legal authority and provides no substantive legal analysis regarding why
this evidence was admissible.  See Tex.
R. App. P. 38.1(i).  Absent any authority or meaningful analysis, we
will not make Curcuru's argument for him, and he has therefore waived this
issue in so far as it complains of those five particular pieces of evidence.  See
id.; see also Garza v. State, 290 S.W.3d 489, 490-91 (Tex.
App.–Corpus Christi 2009, pet. ref'd) (holding that appellant waived issues
where she provided no authority or argument in support of her assertions).

            With regard to the second piece of
complained-of evidence, the forensic interview of A.G. by Jimenez, Curcuru
argues that it was admissible because:  (1) the video complied substantially
with the requirements of section 5(a) of article 38.071 of the code of criminal
procedure, see Tex. Code Crim.
Proc. Ann. art. 38.071, § 5(a) (Vernon 2005); (2) the State opened the
door to its admission by attacking Curcuru's credibility and bolstering the
credibility of A.G. through other witnesses' testimony, see Tex. R. Evid. 608(a)(2); and (3) it
contained a prior inconsistent statement by A.G. necessary to demonstrate
recent fabrication or improper influence or motive of the State's witnesses.  See
Tex. R. Evid. 801(e)(1)(a),
(e)(2).  

            As noted by Curcuru in his appellate brief,
to successfully argue on appeal that a trial court erred in an evidentiary
determination, the appellant must first show that he preserved the error by
stating the grounds for the ruling that he "sought from the trial court
with sufficient specificity to make the trial court aware of the complaint.”  Tex. R. App. P. 33.1(a)(1)(A).  When,
as here, the ruling is one excluding evidence, "it is not enough to tell
the judge that evidence is admissible.  The proponent, if he is the losing
party on appeal, must have told the judge why the evidence was
admissible."  Reyna v. State, 168 S.W.3d 173, 177 (Tex. Crim. App.
2005); see Willover v. State, 70 S.W.3d 841, 845-46 (Tex. Crim. App.
2002) (holding that it is the responsibility of the proponent of the evidence
to identify the rule under which the offered evidence is admissible); Clarke
v. State, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994) (holding that the
appellant must have clearly and expressly offered the evidence at trial for the
purpose he now claims on appeal).  Our review of a trial court's exclusion of
evidence is an abuse of discretion standard.  See Oprean v. State, 201
S.W.3d 724, 726 (Tex. Crim. App. 2006).

            With regard to his first argument—that the
video was admissible under article 38.071 of the code of criminal procedure—we
note that Curcuru never expressly urged this argument as a basis for admission
of the video.  See Clarke, 881 S.W.2d at 694.  However, it is apparent
from the record that the trial court did consider article 38.071 in its
decision to exclude the video from evidence.  So, in the interest of justice,
we cannot conclude that Curcuru failed to preserve this argument because the
trial court was aware of this potential basis for admission, and we will
therefore address it on appeal.  See Tex.
R. App. P. 33.1(a)(1)(A).[6]

Under section 5(a) of article 38.071,
"the recording of an oral statement of the child made before a complaint
has been filed or an indictment returned is admissible into evidence if,"
in relevant part, "no attorney or peace officer was present when the
statement was made . . . ."  Tex.
Code Crim. Proc. Ann. art. 38.071, § 5(a)(1).  Here, it is undisputed
that Lieutenant Darryl Johnson, a detective with the Port Aransas Police
Department, was present during the videotaped interview of A.G. by Jimenez.  On
appeal, Curcuru argues that because Detective Johnson did not play any role in
the interview, his presence did not affect the admissibility of the video.  The
authority he cites does not support this proposition,[7]
and we have found no case law binding on this Court supporting this
interpretation of the code's requirement that no peace officer be present
during the interview.  Rather, the plain language of subsection (a)(1) provides
that a peace officer's presence during the interview of the child makes the
video inadmissible; the code does not qualify this provision depending on the
level of the officer's participation.  See id.  Absent any binding authority
stating otherwise, we conclude that Detective Johnson's presence at A.G.'s
interview made the proffered video inadmissible.  The trial court therefore did
not abuse its discretion in excluding it.  See Oprean, 201 S.W.3d at
726.  Curcuru's second issue is overruled.

IV.       Expert
Qualification

 

            By
his third issue, Curcuru argues that Brian Skop, M.D., the State's expert
witness, was not qualified to testify regarding the profiling of sexual
predators or pedophiles.  Specifically, Curcuru argues that although Dr. Skop
may have been qualified to testify regarding insanity issues, he was not
qualified as a sexual forensics expert.

            We conclude, however, that Curcuru failed to
preserve his challenge to Dr. Skop's qualifications for our review.  At trial,
Curcuru's counsel objected as follows:

[Prosecutor]:              [Dr.
Skop,] [l]et's talk a little bit about a sex offender.  First of all, a child
molester, pedophile-type, are they usually able to fit in well with society?

 

[Defense
counsel]:  I'm gonna object.  Number one, it's a leading question.  I'm gonna
object to the testimony of this man, –

 

[Court]:                       Overruled.

 

[Defense
counsel]:  – as an expert.  I'd request a voir dire examination directed to the
underlying facts or data upon any opinion that he makes.

 

[Prosecutor]:              Your
Honor, we've gone into his expertise and he's been qualified many times before
as an expert, and –

 

[Court]:                       Yeah,
overrule the objection.

 

[Defense
counsel]:  Well, Your Honor, we'll make a – an objection Ruvella (ph. sp.)
Versus State, Texas Court of Criminal Appeals, also, Your Honor.  We don't
believe that his opinion is reliable.  We don't believe the underlying
scientific theories are valid.  We don't believe the theories are valid.  We
don't believe that the techniques are going to be properly applied.  But we'll
reserve our ­– the rest of our objections to testimony.

 

[Prosecutor]:              I
don't think we need to (mumbling) –

 

[Court
reporter]:        I'm sorry?  

 

[Prosecutor]:              I
– I don't think we need to go into techniques of – 

 

[Defense
counsel]:  Okay.  

 

[Prosecutor]:              –
theories, –

 

[Defense
counsel]:  Okay.  

 

[Prosecutor]:              –
but he's certainly been qualified as an expert.

 

[Court]:                       Okay. 
You may proceed.

 

[Defense
counsel]:  I'm gonna object.  An expert regarding what?

 

[Prosecutor]:              Forensic
psychiatry, sex offenders, victimization, defendants.

 

[Defense
counsel]:  I don't think the – I don't think that this expert's testimony is
gonna be of – of any weight to help the jury, Your Honor.

 

[Court]:                       Objection's
overruled.  [Prosecutor], you may proceed.[8]

 

            To
preserve error for appellate review, the complaining party must make a timely
and specific objection at the earliest possible opportunity.  See Tex. R. App. P. 33.1(a).  "A
specific objection regarding expert testimony must detail the particular
deficiency in the expert's qualifications or the reliability of the expert's
opinions."  Acevedo v. State, 255 S.W.3d 162, 167 (Tex. App.–San
Antonio 2008, pet. ref'd) (citing Chisum v. State, 988 S.W.2d 244, 250
(Tex. App.–Texarkana 1998, pet. ref'd)).  Here, Curcuru objected only on the
basis of reliability (i.e., underlying theories and techniques) and relevance
(i.e., whether testimony will be helpful to jury).[9] 
He did not timely and specifically object to Dr. Skop's qualifications. 
Curcuru, therefore, failed to preserve this complaint for our review.  See
Tex. R. App. P. 33.1(a); Acevedo,
255 S.W.3d at 167; see also Manzanares v. State, No. 13-06-00307-CR,
2008 WL 5608261, at *4 (Tex. App.–Corpus Christi Apr. 29, 2008, pet. ref'd)
(mem. op., not designated for publication) (holding that appellant failed to
preserve complaint that expert's testimony was unreliable where he only
objected to the expert's qualifications at trial); Mosley v. State, Nos.
07-02-00178-CR, 07-02-00179-CR, 2003 WL 21919261, at *8 (Tex. App.–Amarillo
Aug. 12, 2003, pet. ref'd) (mem. op., not designated for publication) (holding
that appellant waived his right to complain on appeal that chemist was not
qualified to render opinion on weight of drugs where appellant only objected on
ground that prosecutor's questions were leading).  Curcuru's third issue is
overruled.

V.        Ineffective
Assistance of Counsel

 

            By his fourth and final issue, Curcuru
complains that he received ineffective assistance of counsel.  Specifically,
Curcuru argues that his trial counsel:  (1) was generally unprepared; (2)
failed to preserve certain issues for appeal, several of which we addressed in
his appellate issues above; (3) failed to wage a "battle of the
experts" in which the testimony of Dr. Skop and the State's other experts
could have been countered; (4) failed to adequately cross-examine certain
witnesses at trial; (5) failed to admit certain evidence; and (6) failed to
obtain the testimony of favorable witnesses who were available but not
approached to testify at trial.

A.        Procedural
Background:  The Motion for New Trial and Affidavits

            Curcuru filed a motion for new trial on
November 20, 2008, within thirty days of October 21, 2008, the day of his
sentencing.  See Tex. R. App. P.
21.4(a) ("The defendant may file a motion for new trial before, but no
later than 30 days after, the date when the trial court imposes or suspends
sentence in open court.").  The motion included various arguments that
Curcuru received ineffective assistance of counsel, including all of the arguments
he makes now on appeal.  The motion did not, however, contain any supporting
affidavits or other proof for the several arguments based on matters outside
the trial record.  See Klapesky v. State, 256 S.W.3d 442, 454 (Tex.
App.–San Antonio 2008, pet. ref'd) ("Although it is not specifically
required by statute or the [rules] that a motion for new trial be supported by
an affidavit, Texas courts . . . have long held that when the grounds for a new
trial are outside the record, a defendant must support his motion by his own
affidavit or by the affidavit of someone with knowledge of the facts.")
(citing Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993); McIntire
v. State, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985); Bearden v. State,
648 S.W.2d 688, 690 (Tex. Crim. App. 1983)) (other citations omitted).  On
December 11, 2008, Curcuru filed an amended motion for new trial, and on
December 18, 2008, Curcuru filed a motion for leave to amend his new trial
motion, to which he attached affidavits in support of his various ineffective
assistance of counsel arguments.  Both the amended motions and affidavits were
filed outside the thirty-day period prescribed by rule 21.4.  See Tex. R. App. P. 21.4(a)-(b).  

            On December 19, 2008, the parties appeared
before the trial court to argue the motion for new trial.  At this proceeding,
Curcuru asked the trial court to consider his affidavits filed with the court
on the previous day, but the State objected to the trial court's consideration
of both the amended motion and the affidavits.  The trial court refused to
consider either the amended motion for new trial or the affidavits or to hear
any other evidence and then denied Curcuru's original motion for new trial.  At
the conclusion of this proceeding, the trial court allowed Curcuru to submit
the affidavits "for appellate purposes," and the affidavits therefore
appear in the record before us.  Curcuru has not, however, challenged on appeal
the trial court's refusal to consider the affidavits or hear other evidence at
the proceeding.

            On appeal, Curcuru extensively cites the
affidavits as support for his various ineffective assistance of counsel
arguments, in particular, his arguments on matters outside the record.  A
threshold question, then, is whether we may consider those affidavits in our
resolution of Curcuru's ineffective assistance issue.  Because Curcuru brings
no issue before this Court challenging the trial court's refusal to consider
those affidavits and because, ultimately, the trial court did not err in so
refusing, we conclude that we may not.  

It is true that Curcuru's original
motion for new trial was timely.  However, to the extent that motion raised
matters not determinable from the trial record, it was required to be supported
by sworn proof of some kind.  See Klapesky, 256 S.W.3d at 454 ("A
motion for new trial alleging facts outside the record without supporting
affidavits is not a proper pleading and is defective . . . .") (citations
omitted).  Curcuru did not supplement his motion with supporting affidavits
until well after the thirty-day deadline had passed.  "Filing affidavits
in support of a motion for new trial more than 30 days after sentencing is
considered an untimely attempt to amend the motion."  See id. at
455 (citing Dugard v. State, 688 S.W.2d 524, 529-30 (Tex. Crim. App.
1985), overruled on other grounds by, Williams v. State, 780
S.W.2d 802, 803 (Tex. Crim. App. 1989)) (other citations omitted).  And because
the State objected to the trial court's consideration of the affidavits and
amended motion, neither the trial court nor this Court may consider them.[10] 
See State v. Moore, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007) (holding
that, if the State objects to an untimely amended motion for new trial, the
trial court and appellate court should consider only the original motion and
any timely amendment).  We therefore analyze Curcuru's ineffective assistance
of counsel claims based only on the trial record.  

B.        Standard
of Review and Applicable Law

            We apply the two-pronged Strickland
analysis to determine whether counsel's representation was so deficient that it
violated a defendant's constitutional right to effective assistance of
counsel.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005); Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi
2006, no pet.); see Strickland v. Washington, 466 U.S. 668, 684 (1984). 
An appellant claiming a Strickland violation must establish that (1)
"his attorney's representation fell below an objective standard of
reasonableness [deficiency prong], and (2) there is a reasonable probability
that, but for his attorney's errors, the result of the proceeding would have
been different [prejudice prong]."  Jaynes, 216 S.W.3d at 851; see
Strickland, 466 U.S. at 687.  

As to the deficiency prong, we afford
great deference to trial counsel's ability—"an appellant must overcome the
strong presumption that counsel's conduct fell within the wide range of
reasonable professional assistance" and that counsel's actions were the
result of sound and reasonable trial strategy.  Jaynes, 216 S.W.3d at
851.  A reasonable probability of prejudice is one that is "sufficient to
undermine confidence in the outcome," and a lawyer's deficient performance
must undercut the "proper functioning of the adversarial process"
such that the result of the trial cannot be reliable.  Mallett v. State,
65 S.W.3d 59, 62 (Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d
808, 812-813 (Tex. Crim. App. 1999).  

The appellant must prove both elements
of the Strickland test by a preponderance of the evidence.  Munoz v.
State, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.). 
Typically, a silent record that provides no explanation for counsel's actions
will not overcome the strong presumption of effective assistance.  Rylander
v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).[11]

C.        Analysis

            Curcuru asserts what we have re-grouped and
construed as six general grounds supporting his ineffective assistance of
counsel claim.

1.    General
unpreparedness

First, Curcuru argues that his trial
counsel was unprepared for trial, alleging that counsel only began to call
potential witnesses on the Sunday before the Monday start of Curcuru's jury
trial.  However, this argument is based on matters not determinable from the
trial record, and because we have no evidence before us concerning anything
outside the trial record, we cannot conclude that Curcuru has proven this
deficiency allegation by a preponderance of the evidence.  See id. at
110-11; Munoz, 24 S.W.3d at 434.

Curcuru also argues that trial counsel
was unprepared because, prior to trial, he failed to adequately test the
foundation for the State's expert testimony through voir dire or object to the
State's alleged failure to deliver all expert material.  Curcuru argues that
although trial counsel "filed a motion to voir dire the State's expert
witnesses prior to testimony" and "filed an Amended Motion for
Discovery request[ing] expert witnesses['] curriculum vitae," trial
counsel "never followed through and obtained these crucial documents and
never took advantage of his ability to voir dire the experts."  The record
here does not provide explanations for trial counsel's actions, however, and as
such, we conclude that Curcuru has failed to overcome the presumption that
trial counsel's performance was reasonably sufficient with regard to this
particular argument.  See Jaynes, 216 S.W.3d at 851.

2.    Failure
to preserve certain errors

Curcuru next argues that we should
consider as prejudicial deficiencies any actions or omissions by trial counsel
that this Court found "to be contributory" to the failure of any of
Curcuru's foregoing three appellate issues.  In other words, if we concluded
that trial counsel failed to preserve and/or waived any of the foregoing
issues, Curcuru asserts that this constituted ineffective assistance.  We found
three such instances.  

First, we concluded that trial counsel
failed to object to the testimony of C.M. on the grounds that the State failed
to give timely notice under rule of evidence 404(b).[12] 
In that issue, Curcuru asserted that the State first notified him in writing of
C.M.'s potential testimony on October 6, 2008, which was the first day of voir dire. 
Citing McDonald v. State, Curcuru argued that he was entitled to rely on
the representations in the State's written notices and that the State's only
written notice of C.M.'s testimony on October 6 was too late to comply with the
rule.  See 179 S.W.3d 571, 577 (Tex. Crim. App. 2005) (holding that
"the State submitted documents that purported to consist of its notice of
intent to offer acts of uncharged misconduct" and the "appellant was
entitled to rely upon the State's notices and to assume that these acts were
the only ones that the State intended to offer").  

Even assuming that the complaint was
preserved and the trial court erred in admitting the evidence because of lack
of notice, however, we conclude that the error was harmless.  When an alleged
error concerns a lack of notice, the presence of harm depends on whether the
appellant was surprised by the evidence.  See Hernandez v. State, 176
S.W.3d 821, 825-26 (Tex. Crim. App. 2005); see also Sharp v. State, 210
S.W.3d 835, 839 (Tex. App.–Amarillo 2006, no pet.).  Here, Curcuru does not
argue on appeal that he was surprised by the evidence; his harm argument
focuses only on the harm of admitting extraneous misconduct evidence for
purposes of proving actions in conformity with those propensities.  For that
reason, this issue provides the Court with no basis to reverse the conviction.[13] 
See Sharp, 210 S.W.3d at 839-40.  

Second, in Curcuru's second appellate
issue, we noted that trial counsel failed to urge as grounds for admissibility
of A.G.'s videotaped interview that the State opened the door to its admission
or that the video contained a prior inconsistent statement.[14] 
Because trial counsel failed to urge these grounds, we concluded that he failed
to preserve those arguments as bases for the admissibility of the video.  See
Reyna, 168 S.W.3d at 177; see also Willover, 70 S.W.3d at 845-46; Clarke,
881 S.W.3d at 694.  However, we also concluded the video was ultimately
inadmissible because a peace officer was present during the interview.  See
Tex. Code Crim. Proc. Ann. art.
38.071, § 5(a).  Therefore, Curcuru has not demonstrated that this omission by
trial counsel prejudiced him at trial.  See Jaynes, 216 S.W.3d at 851.

Finally, in Curcuru's third appellate
issue, we concluded that trial counsel failed to preserve Curcuru's challenge
to the qualifications of Dr. Skop.[15] 
In that issue, Curcuru argued that Dr. Skop was not qualified to testify
regarding the profiling of sexual predators or pedophiles.  Even if trial
counsel had preserved the issue, however, we conclude that the trial court did
not err in allowing Dr. Skop to testify because the State adequately
established Dr. Skop's qualifications.

Determining an expert's qualification is
a two-step inquiry.  Vela v. State, 209 S.W.3d 128, 131 (Tex. Crim. App.
2008).  First, a witness must have a sufficient background in the relevant
field.  Id.  Second, that background must relate to the very matter on
which the witness is to give an opinion.  Id.  With regard to the second
step, in particular, the trial court should focus on the "fit"
between the subject matter at issue and the expert's familiarity with that
subject matter.  Id. at 132.

"'Because the possible spectrum of
education, skill, and training is so wide, a trial court has great discretion
in determining whether a witness possesses sufficient qualifications to assist
the jury as an expert on a specific topic in a particular case,'" and we
will not disturb the court's ruling in that regard unless an abuse of that
discretion is shown.  Davis v. State, 313 S.W.3d 317, 350 (Tex. Crim.
App. 2010) (quoting Rodgers v. State, 205 S.W.3d 525, 527-28 (Tex. Crim.
App. 2006)).  "For this reason, appellate courts rarely disturb the trial
court's determination that a specific witness is or is not qualified to testify
as an expert."  Rodgers, 205 S.W.3d at 528 n.9 (citing Wyatt v.
State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000)).  

Here, in relevant part, the State
attempted to develop Dr. Skop's qualifications in the following exchange:

[Prosecutor]:              And what is your occupation?

 

[Dr. Skop]:                  I'm a psychiatrist[.]

 

                                    . . . . 

 

[Prosecutor]:              Okay.  How long have you been
a psychiatrist?

 

[Dr. Skop]:                  I finished my residency in
1996, so, 12 years.

 

[Prosecutor]:              And
let's talk about your educational background.  Would you, please, share with
the jury where you attended school.

 

[Dr. Skop]:                  Yes. 
I went to college at Duke University and got a degree in mathematics, there. 
Then I went to medical school at Washington University in St. Louis.  After
that I did my psychiatry residency at Wilford Hall, which is the Air Force –
Air Force's biggest hospital, in San Antonio, Texas.

 

[Prosecutor]:              Okay. 
And is there any type of psychiatry that you are most interested in?

 

[Dr. Skop]:                  Yes. 
I'm Board Certified in Forensic Psychiatry, which is the area of psychiatry
that studies the legal ramifications of psychiatric illnesses, both criminal
and civil.

 

[Prosecutor]:              Have
you testified before as an expert in a court of law?

 

[Dr. Skop]:                  Yes, I have.

 

[Prosecutor]:              Has that been on few or many
occasions?

 

[Dr. Skop]:                  It's
been on many occasions.  I do consultations through the Bexar County Courts,
and I probably do, I would guess, 30 to 40 percent of their psychiatric
evaluations that are court-ordered.  So I testify, I would say, probably, about
75 times a year.

 

[Prosecutor]:              Okay. 
Now, the courts will appoint you to evaluate a defendant?

 

[Dr. Skop]:                  Yes. 
I – I – the principle [sic] work that I get, the majority of it is
court-appointed, where the judge – or one of the lawyers approaches the judge
and asks for either a competency or sanity evaluation and I get ordered by the
Court to do that.  Some of the cases I get appointed by the defense attorneys
themselves and other times I get appointed by the prosecutor.  

 

[Prosecutor]:              So
do you evaluate defendants, also, on whether they're competent or whether
they're sane or insane?

 

[Dr. Skop]:                  Yes,
that's the majority of work I do, in addition to looking at mitigating issues that
may – which are psychiatric conditions a person may have that may come into
play with their legal charges, but maybe not rise at the threshold of being
insane.

 

                                    . . . .

 

[Prosecutor]:              Okay.  All right.  Are you
familiar with sex offenders?

 

[Dr. Skop]:                  Yes, I am.

 

[Prosecutor]:              Is that part of your work as a
psychiatrist?

 

[Dr. Skop]:                  It's
part of my work as both a psychiatrist and a forensic psychiatrist.

 

[Prosecutor]:              Okay. 
And are you familiar both with victims of sexual abuse and with offenders of
sexual abuse?

 

[Dr. Skop]:                  Yes, I am. 

 

[Prosecutor]:              And
have you dealt with this area on few or many occasions?

 

[Dr. Skop]:                  Many occasions.

 

[Prosecutor]:              Let's
talk a little bit about a sex offender.  First of all, a child molester, pedophile-type,
are they usually able to fit in well with society?

 

At this point, Curcuru's counsel objected on the basis of
reliability and relevance, and the trial court overruled the objection.

            We believe that the prosecutor adequately
showed Dr. Skop's qualifications by establishing his professional and
educational background, that he was familiar with sex offenders and their
victims, and that he worked with sex offenders and victims in his practice.  In
other words, she demonstrated his background in the relevant field and that his
experience fit the matter about which he was going to testify—i.e., the habits
and characteristics of sex offenders.  See Vela, 209 S.W.3d at 131-32. 
Given the high level of deference we show to trial courts in determining the
qualifications of expert witnesses, we cannot conclude that the trial court
abused its discretion in admitting the testimony of Dr. Skop.  See Davis,
313 S.W.3d at 350; Rodgers, 205 S.W.3d at 527-28 & n.9  Because Dr.
Skop's qualifications were established, Curcuru has failed to demonstrate how
any deficiency by trial counsel in failing to object affected the outcome of
his trial.  See Jaynes, 216 S.W.3d at 851.

3.    "Battle
of the Experts"

Curcuru next argues that trial counsel
was deficient for failing to wage a "battle of the experts" to
counter the testimonies of Dr. Skop and the sexual assault nurse examiner and
forensic pediatrician who interviewed and examined A.G. at the hospital. 
Curcuru asserts that trial counsel had advance notice of this testimony and
therefore sufficient time to find a competing expert.[16] 
Curcuru also asserts that he arranged for a particular expert to testify as
part of the defense case but that trial counsel did not make use of that
expert.  Finally, Curcuru asserts that the expert testimony of Dr. Skop, in
particular, was critical to the jurors in their determination.

We first note that, in support of his
assertions that trial counsel did not make use of an expert provided to him by
Curcuru and that Dr. Skop's testimony was critical to certain juror's
decisions, Curcuru cites affidavits we cannot consider.  See Moore, 225
S.W.3d at 570; Klapesky, 256 S.W.3d at 455.  As such, those arguments
are based on matters not determinable from the record before us, we conclude
that Curcuru has failed to prove them by a preponderance of the evidence.  See
Munoz, 24 S.W.3d at 434.  With regard to Curcuru's assertion that trial
counsel was deficient because he had advance notice of all of the State's
expert testimony but chose to not call a competing expert, we conclude that the
record is silent as to trial counsel's decision-making and trial strategy, and
Curcuru has failed to rebut the presumption that trial counsel provided
reasonably professional assistance with regard to his expert witness
decisions.  See Rylander, 101 S.W.3d at 110-11; Jaynes, 216
S.W.3d at 851.

4.    Inadequate
cross-examination of certain witnesses

Next, Curcuru argues that his trial
counsel failed to adequately cross-examine the following witnesses at trial: 
E.F., A.G.'s mother; Dr. Skop; H.T., C.M.'s mother; and Susan Dobie, the CPS
agent who responded to a tip that A.G. was being abused in Port Aransas, Texas. 


With regard to E.F., Curcuru argues that
trial counsel failed to sufficiently attack E.F.'s credibility by using
transcripts of E.F.'s sworn testimony from A.G.'s CPS removal proceedings that
he alleges was inconsistent with her testimony at trial.  Curcuru provides no
record cites to these transcripts and, in our review of the record, neither
have we found the transcripts to which he refers in his brief.  Without this
evidence, we cannot conclude that Curcuru has proven this alleged deficiency by
a preponderance of the evidence, and we are therefore unpersuaded by this
argument.  See Munoz, 24 S.W.3d at 434.

With regard to Dr. Skop, Curcuru argues
that trial counsel did not adequately cross-examine him about A.G.'s alleged
regressive behavior.  Various witnesses at trial testified that, although A.G.
was potty-trained and could speak in complete sentences in the earlier part of
2007, by October 2007, when the abuse was allegedly occurring, A.G. needed
diapers and could not communicate coherently.  Curcuru argues that trial
counsel should have pressed Dr. Skop about E.F.'s alleged physical abuse of
A.G. and how this could have contributed to the regression in A.G.'s behavior. 
Without any evidence in the record regarding trial counsel's strategies and
decision-making, however, we cannot conclude that Curcuru has rebutted the
presumption that trial counsel's questioning of Dr. Skop was reasonable and
professional.  See Jaynes, 216 S.W.3d at 851.  Regardless, Curcuru has
failed to demonstrate that, if trial counsel's questioning of Dr. Skop was
deficient, it prejudiced the outcome of the trial.  See id.; see also
Strickland, 466 U.S. at 687.

With regard to H.T., Curcuru argues that
trial counsel failed to adequately test her credibility as a witness by
introducing a prior police statement, CPS records, and medical records for C.M.
that all contained prior inconsistent statements by H.T.  Neither the police
statement nor the medical records appear in the record before us, and in his
brief, Curcuru does not detail or explain the contents of those documents and
how they would have affected H.T.'s credibility.  See Tex. R. App. P. 38.1(i).  Without that
information, we cannot conclude that Curcuru was prejudiced by trial counsel's
failure, if any, to admit these documents.  See Rylander, 101 S.W.3d at
110-11.  And although C.M.'s CPS records do appear in the record as a bill of
exception, see Tex. R. App. P.
33.2, Curcuru has similarly failed to explain how the contents of those records
would have damaged H.T.'s credibility, see Tex. R. App. P. 38.1(i), much less demonstrate how the
admittance of the CPS records would have affected the outcome of his trial.  See
Jaynes, 216 S.W.3d at 851.  We further note that because the record does
not provide any explanations for trial counsel's actions, Curcuru has not
rebutted the presumption of reasonable professional assistance with regard to
the questioning of H.T.  See id.; see also Mallett, 65 S.W.3d at
63 (holding that a silent record that provides no explanation of counsel's actions
will not overcome the strong presumption of reasonable assistance); Thompson,
9 S.W.3d at 813-14 (same).

Finally, with regard to Dobie, Curcuru
argues that trial counsel failed to adequately test her credibility.  Dobie was
the CPS agent who responded to a call from Curcuru's employer in Port Aransas
regarding possible abuse of A.G.  Dobie testified that when she went to E.F's
apartment to investigate, she took pictures of injuries to A.G. but lost the
memory card on which those pictures were stored.  Curcuru argues that trial
counsel should have pressed Dobie about this lost memory card in order to
damage her credibility.  However, because the record is silent as to trial
counsel's strategies, we, again, cannot conclude that Curcuru has rebutted the
presumption that trial counsel's questioning of Dobie was sufficient
performance.  See Mallett, 65 S.W.3d at 63.  To conclude otherwise would
be pure speculation.  Moreover, and again, even if trial counsel's questioning
of Dobie was deficient, Curcuru has failed to demonstrate that questioning
Dobie further about the lost memory card would have affected the outcome of the
trial.  He has therefore failed to demonstrate prejudice.  See Jaynes,
216 S.W.3d at 851.

5.    Failure
to admit certain evidence at trial

Curcuru next
argues that trial counsel was deficient for failing to admit the following
evidence at trial:  A.G.'s videotaped forensic interview with Jimenez,; and
results from the DNA test performed on A.G. at the hospital.

We have already
concluded that the video of Jimenez's interview of A.G. was inadmissible because
a police officer was present.  Thus, we cannot conclude that trial counsel's
performance was deficient in failing to further pursue admitting the video into
evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.071, § 5(a).

With regard to
the DNA testing records, Curcuru argues that the results were never introduced
by trial counsel, and because they were negative, the records would have been
"critical" to the jury "in concluding that [Curcuru] did not
perpetrate this offense."  We first note that the actual DNA records do
not appear in the record before us so we cannot verify that Curcuru's
representations are accurate.  Regardless, at trial, there was testimony about
the DNA test results in which it was communicated to the jury that the results
did not "positive[ly] identif[y]" anyone as the perpetrator.  Because
the jury was presented with evidence that the DNA results were negative, we
cannot conclude that the admission of the actual records would have affected
the outcome of the trial.  See Jaynes, 216 S.W.3d at 851.

6.    Failure
to obtain testimony from certain favorable witnesses

Finally, Curcuru argues that trial
counsel was ineffective for failing to secure the following witnesses who would
have allegedly testified favorably at trial:  Shelly Martin, a woman Curcuru
dated who had small children and would have testified that nothing unusual
happened when Curcuru was around her children; Jennifer Greene, a friend of
DeBord's who would have testified that DeBord's mother was forcing her to
testify against Curcuru; and employees from the tattoo shop where Curcuru
worked, who would have testified about Curcuru's schedule leading up to the
date of the offense and which testimony would have disproved one of the State's
theories that Curcuru had exclusive access to A.G. in the days leading up to
the alleged date of the assault.  

Although Curcuru cites to affidavits
that purport to verify this testimony, we are unable to consider that
evidence.  See Moore, 225 S.W.3d at 570; Klapesky, 256 S.W.3d at
455.  So, again, looking only at the record before us, which is silent as to
the foregoing potential witnesses, we cannot conclude that Curcuru has proved
this alleged deficiency by a preponderance of evidence.  See Munoz, 24
S.W.3d at 434.  And absent any testimony or other evidence from trial counsel,
we furthermore cannot conclude that Curcuru has rebutted the presumption that
trial counsel's decision not to call these witnesses was sound trial strategy. 
See Mallett, 65 S.W.3d at 63; Jaynes, 216 S.W.3d at 851.  We are
therefore unpersuaded by this argument.

7.    Summary

Curcuru has failed to demonstrate that
his trial counsel's performance was deficient or, even if it were, that but for
any deficiency, the outcome of his trial would have been different.  See
Strickland, 466 U.S. at 684, 687.  Curcuru's fourth issue is overruled.

 

 

 

 

VI. 
Conclusion

 

            Having overruled all of Curcuru's issues, we
affirm his conviction.

            

 

                                                                                         NELDA
V. RODRIGUEZ

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 9th

day of December,
2010.

                                                                                                                                                            









[1]
Because this is a memorandum opinion and the parties are familiar with the
facts, we will not recite them here except as necessary to advise the parties
of the Court's decision and the basic reasons for it.  See Tex. R. App. P. 47.4.





[2]
In addition, Curcuru's sexual assault count contained a deadly weapon
enhancement, see Tex. Penal Code
Ann. § 22.021(a)(2)(A)(iv) (Vernon Supp. 2010), and he was also indicted
for injury to a child, see id. § 22.04(a) (Vernon Supp. 2010);
however the State abandoned the deadly weapon enhancement and the injury to a
child count before trial.

A.G.'s mother, E.F., was also indicted for the foregoing
offenses but her case is not before the Court in this appeal.

 





[3]
On appeal, Curcuru does not challenge the trial court's refusal to consider the
amended motions and accompanying affidavits.





[4]
Curcuru also argues that the State failed to disclose C.M.'s testimony prior to
trial in violation of article 38.37 of the code of criminal procedure.  See
Tex. Code Crim. Proc. Ann. art.
38.37, § 3 (Vernon Supp. 2010).  However, article 38.37 applies to evidence of
"other crimes, wrongs, or acts committed by the defendant against the
child who is the victim of the alleged offense . . . ."  See id.
art. 38.37, §§ 2-3 (emphasis added).  The complained-of evidence relates to an
alleged act against a child other than A.G., the child alleged to be the victim
in this case.  Because article 38.37 is inapplicable to the complained-of evidence,
we will not consider it as a ground for the inadmissibility of C.M.'s
testimony.





[5]
We note that, at several pre-trial hearings in the two months preceding
Curcuru's October 2008 trial, the prosecutor and counsel for Curcuru refer to
and discuss the potential testimony of C.M.  This suggests that, even if
Curcuru did not have official written notice regarding C.M., he did have
knowledge of the potential that C.M. would be a witness for the State.





[6]
With regard to Curcuru's second and third arguments, however, we conclude that
Curcuru failed to preserve these bases for the admissibility of the video.  The
only grounds expressly urged by Curcuru for the admission of the video were
that the video contained an admission by a party opponent, contained a statement
of present sense impression, and/or was admissible under the rule of optional
completeness.  Curcuru did not offer the evidence to the trial court on the
bases that either the State opened the door or the statement was a prior
inconsistent statement.  See Reyna v. State, 168 S.W.3d 173, 177
(Tex. Crim. App. 2005); Willover v. State, 70 S.W.3d 841, 845-46 (Tex. Crim.
App. 2002); Clarke v. State, 881 S.W.2d 682, 694 (Tex. Crim. App. 1994). 
Further, having reviewed the relevant portions of the record, we cannot
conclude—as we did with Curcuru's first argued basis—that the trial court
independently considered either of these arguments as a basis for admission and
was thus otherwise aware of those bases.  See Tex. R. App. P. 33.1(a)(1)(A).  We therefore overrule
Curcuru's second issue to the extent that it relies on those two arguments.





[7]
Torres v. State, the case cited by Curcuru, interprets subsection (a)(10)
of article 38.071, section 5, which deals with whether the competence of a
child witness to testify was established.  33 S.W.3d 252, 256-57 (Tex. Crim.
App. 2000); see Tex. Code Crim.
Proc. Ann. art. 38.071, § 5(a)(10) (Vernon Supp. 2010).  Torres
does not involve any issue related to subsection (a)(1), which is the
subsection dealing with peace officer presence.  See Tex. Code Crim. Proc. Ann. art. 38.071,
§ 5(a)(1).





[8]
Dr. Skop then proceeded to testify about, among other things, the following
social and personal behaviors of child molesters:  they can fit in well in
society; they target what they perceive as vulnerable families; they engage in
certain types of sex acts with children when their adult partners will not
engage in that type of sex; and they often have apparently close and loving
relationships with their victims.





[9]
To the extent that Curcuru challenges the reliability and/or relevance of Dr.
Skop's testimony on appeal, we conclude he has inadequately briefed this
portion of his third issue.  He provides no relevant analysis or cites to the
record, making, instead, only bare assertions that the trial court failed to
make various "affirmative finding[s]" in this regard.  As such, we
are unable to discern his argument on appeal, if any, regarding reliability or
relevance.  See Tex. R. App. P.
38.1(i) (requiring the appellant to provide "a clear and concise argument
for the contentions made").





[10]
The fact that the trial court allowed Curcuru to submit the affidavits for
"appellate purposes"—essentially, as bills of exception, see Tex. R. App. P. 33.2—does not mean that
the affidavits are automatically part of the appellate record to be considered
by this Court in reviewing the merits of Curcuru's ineffective assistance
issue.  Before we would be able to consider the affidavits, Curcuru would have to
challenge the action of the trial court that led to the exclusion of those
affidavits, a challenge he has made neither on appeal nor in the trial court.





[11]
In this case, Curcuru filed a motion for new trial, and the trial court heard
argument on the motion.  However, at the proceeding, as previously discussed,
the trial court ultimately considered no evidence in its determination to deny
Curcuru's motion for new trial.  For our purposes in determining the standard
of review, then, we conclude that it is not necessary to apply the line of
cases construing ineffective assistance issues as challenges to the trial
court's denial of the appellant's motion for new trial.  See Charles v.
State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), superseded by rule on
other grounds by, State v. Herndon, 215 S.W.3d 901 (Tex. Crim. App.
2007) (setting out evidentiary standards for reviewing ineffective assistance
issues when there has been motion for new trial hearing with evidence); Shanklin
v. State, 190 S.W.3d 154, 158-59 (Tex. App.–Houston [1st Dist.] 2005), pet.
dism'd, 211 S.W.3d 315 (Tex. Crim. App. 2007) (reviewing the Strickland
analysis through an abuse of discretion standard and viewing the evidence in
the light most favorable to the ruling); see also Delgado v. State, No.
13-09-00300-CR, 2010 WL 3279488, at *2 (Tex. App.–Corpus Christi Aug. 19, 2010,
no pet.) (mem. op., not designated for publication) (same).  In those cases,
the reviewing court considers the evidence considered by the trial court at the
motion for new trial hearing.  Because no such evidence was considered here,
those evidence-dependent standards of review are not necessary to our
resolution of the case, and we need not construe Curcuru's ineffective
assistance issue as a challenge to the denial of the motion for new trial in
order to reach that evidence.





[12]
See supra Part II.B.





[13]
Further, McDonald v. State, the case relied upon by Curcuru, is
distinguishable.  179 S.W.3d 571 (Tex. Crim. App. 2005).  In McDonald,
the court of criminal appeals found reversible error for two reasons.  Id.
at 577.  First, the State represented that its written notice was the only
notice on which the defendant should rely.  Id.  Second, the appellant
disputed the State's claim that he had actual notice of the extraneous
misconduct testimony.  Id.  Here, having reviewed the records of the
pre-trial proceedings, we cannot conclude that the State represented its
written notices as the only notices upon which Curcuru should rely.  Moreover,
it is apparent from the record that Curcuru and his counsel had notice of the
potential testimony by C.M., and Curcuru does not dispute that actual notice on
appeal.  We are therefore not persuaded that McDonald controls the
resolution of Curcuru's notice argument.





[14]
See supra note 6 and accompanying text.





[15]
See supra Part IV.





[16]
We note that this assertion seems to contradict Curcuru's earlier claim that
the State did not provide all expert materials to trial counsel prior to
trial.  See supra Part V.C.1.